J.T. CARR, et al., Plaintiffs,

v.

CITY OF FLORENCE, ALABAMA, et al., Defendants.

Civ. A. No. 88–AR–5262–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

Jan. 12, 1990.

784

Susan Walker, Clarence L. McDorman, Jr., Birmingham, Ala., for plaintiffs.

William T. Musgrove, Jr., Walker & Musgrove and A. Stewart O'Bannon, Jr., O'Bannon & O'Bannon, Florence, Ala., for Rick Thompson, Timothy "Tim" Harvey, City of Florence, S. Anderson, M. Crunk, R. Freeman, J. Gillette, K. Johnson, J. Patterson, M. Ray and H. White.

Dennis Riley, Morring, Schrimsher & Riley and Sharon Hindman, Huntsville, Ala., for Lauderdale County Ala., Billy Townsend, Mike Boggan, Charles Perkins, Richard Richey, Kent Simms & Clifford Whitten and Chas. Ford.

## MEMORANDUM OPINION

ACKER, District Judge.

The above-entitled case arose out of a nighttime chase and warrantless search by law enforcement personnel from several police jurisdictions in northwest Alabama. It started when two sons of J.T. Carr were observed in the City of Florence in a situation which gave the appearance of being a drug purchase. This led to a high-speed chase, during which the boys abandoned their vehicle in a cotton field, after which tracking dogs were brought to the scene by the police. A Florence policeman, Officer Ticer, while directing traffic at the scene, was killed by a driver totally unconnected with the Carr boys, his only relationship to the incident being that he was on duty. This fact, which was misinterpreted by some of the law enforcement people, increased the adrenalin level in a fast-growing number of officers from Florence and surrounding jurisdictions. The original complaint was brought pursuant to 42 U.S.C. § 1983 by twelve occupants of three separate dwellings which were searched. One of the plaintiffs was J.T. Carr. The plaintiffs also stated pendent state tort claims. Named as defendants not only were the City of Florence, its Chief of Police, and a number of Florence police officers, but Lauderdale County, its Sheriff, and a number of its deputies. At pretrial, the case against the Lauderdale County defendants was bifurcated, and as a result of earlier rulings dealing with the "immunity" defenses of the County defendants, the aspect of the case involving the

County defendants is now on appeal to the Eleventh Circuit and remains technically viable, in whole or in part.

After a lengthy trial of the various claims by the twelve plaintiffs against the eleven City defendants, the court granted directed verdicts in favor of some defendants and against some plaintiffs. Pursuant to a directed verdict in favor of one plaintiff, J.T. Carr, and against one defendant, Officer Timothy Harvey, and consistent with a previous grant of partial summary judgment, the jury rendered a verdict in the sum of $100.00 in compensatory damages, but awarded no punitive damages. All other jury verdicts were in favor of the defendants and against the plaintiffs.

Plaintiffs have filed a timely motion for new trial as against those City defendants who did not receive directed verdicts in their favor.

In the alternative, plaintiff J.T. Carr seeks an additur to his $100.00 damage award against defendant, Officer Harvey, whose liability *vel non* had been adjudicated by the court by the granting of summary judgment in favor of J.T. Carr and against Harvey prior to trial. As noted, the motion for new trial does not purport to ask the court to set aside any of the verdicts directed by the court.

Secondarily, the court has for consideration a petition by plaintiff, J.T. Carr, for the award of attorneys' fees against Harvey pursuant to 42 U.S.C. § 1988. It goes without saying that if the court should set aside any jury verdict, any consideration of attorneys' fees would be premature, because it would be impossible to know which party or parties will ultimately prevail. Therefore, the petition for attorneys' fees by J.T. Carr is necessarily contingent upon the court's denial of plaintiffs' motion for new trial.

### The Weight of the Evidence

Plaintiffs' motion for a new trial is, then, the first matter to be addressed. To the extent the motion can be said to urge an alleged irrefutable and inexorable legal significance to facts which are basically undisputed, the motion really amounts to a belated plaintiffs' motion for directed ver-dict or to a motion for judgment n.o.v., both of which motions would come too late if made now. Under the circumstances, the court sees no purpose to be served in rehashing or analyzing the lengthy evidence, which tells a tragic story having two sides to it. The jury could easily have agreed with plaintiffs and against those defendants against whom some of plaintiffs' claims were submitted to the jury, because there was ample evidence, sufficient to meet the test of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969), to support some plaintiffs' verdicts. However, the same is true as to the defendants' verdicts which the jury did reach. The Seventh Amendment precludes a trial judge from second-guessing a jury which heard the testimony and considered the credibility of the witnesses, that is, if the evidence could, with its logical inferences, rationally lead to the verdict which the jury, in fact, reached after receiving proper instructions from the court as to the applicable law. Plaintiffs' motion for new trial does not complain of any of the court's instructions to the jury, and plaintiffs took no exception to the jury charge prior to the submission of the case to the jury.

The court concludes that the motion for new trial based on the weight or sufficiency of the evidence is due to be denied.

### Plaintiffs' Allegations of Prejudicial Remarks By Defense Counsel

This was a hard-fought case, but it was a case which was fought as cleanly as any hard-fought case that this court has witnessed as a trial judge. This court does not believe that the result was tainted by any remark or prejudicial statement made by counsel for defendants, especially no remark which was allowed over plaintiffs' timely objection.

### The Sustaining of Defendants' Objection to Plaintiffs' Proposed Exhibit No. 56

The only serious question presented by plaintiffs' motion for a new trial, a question which gives the court sufficient pause to call for a serious re-examination, is the evidentiary ruling which prevented plaintiff, J.T. Carr, from offering into evidence

plaintiffs' proposed Exhibit No. 56, the resolution formally adopted by the City Council of the City of Florence on April 15, 1986. This resolution was proffered by plaintiffs after Harvey introduced evidence, without objection from plaintiffs, tending to prove a shortage of personal financial resources with which to pay any sizeable judgment, if one were entered. If plaintiffs had then objected to this line of inquiry by Harvey's counsel, the court would have promptly sustained the objection in accordance with the instruction of *Southern Life & Health Co. v. Whitman*, 358 So.2d 1025, 1026 (Ala. 1978), in which the Supreme Court of Alabama reiterated the Alabama rule that evidence of a defendant's wealth or lack thereof is highly prejudicial and, therefore, inadmissible. *Southern Life & Health* recognized no distinction between cases which claim only compensatory damages and cases which also claim punitive damages.

The Council resolution of April 15, 1986, provided, *inter alia:*

BE IT RESOLVED by the City Council of the City of Florence, Alabama, as follows:

That the City agrees to pay on behalf of all members of the boards, elected and appointed officials and employees of the City of Florence, Alabama, all sums which such persons become legally obligated to pay as damages because of bodily injury, property damage or negligent and wrongful acts caused by an occurrence arising out of and in the line and scope of their legal duties; that the City Council of the City of Florence, Alabama, shall have the right and duty to defend any suit against the members of boards, elected and appointed officials and employees of the City of Florence, which said suit seeks damages on account of said negligent or wrongful acts performed in the line and scope of their duties, said payments may include court costs and attorneys' fees. The City Council shall make such investigation and settlement of any claim or suit as it deems expedient, however, the City shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the City's liability as provided by Statute has been exhausted by payment of judgment or settlements. . . .

When plaintiffs offered this resolution as their Exhibit No. 56, this court was at first inclined to receive it over defendants' objection in the belief that defendant Harvey had "opened the door," and in the further belief that the resolution was the functional equivalent of money-in-the-bank or an insurance policy covering Harvey for the amount of any verdict, compensatory or punitive, which might be rendered against him. However, after careful study over night, the court changed its mind and reached the conclusion that defendants' objection to the resolution of April 15, 1986, was well taken. The objection was then sustained, and the jury never saw plaintiffs' Exhibit No. 56. It is of this ruling that plaintiffs now vigorously again complain. The court still believes it was correct for the following separate and several reasons:

### A. *The Breadth of Municipal Immunity*

The fact that *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), absolutely insulates a municipality from punitive damages in actions brought under 42 U.S.C. § 1983 may or may not insulate that municipality from its responsibility to honor a valid contract or a valid corporate resolution by which it has undertaken to indemnify its employees for liability for their wrongful acts which result in the assessment of punitive damages if those acts were performed in their official capacities, either under § 1983 or under state law. There is no doubt that plaintiff J.T. Carr was primarily seeking punitive damages against Officer Harvey, who admitted that he, in anger, slapped J.T. Carr during an interrogation about the possible location of J.T. Carr's two fleeing sons. There is no doubt that Harvey was then acting in his official capacity as a police officer of the City. Harvey's counsel arguably "opened the door" to J.T. Carr's offer of evidence which would logically tend to rebut Harvey's contention of an alleged inability to

respond in punitive damages. Were it not for the "door opening" argument, there would be no issue, because the law of Alabama is clear on the subject. It is as follows:

> While we recognize that other jurisdictions do permit the introduction into evidence the wealth of a defendant, we adhere to our rule of excluding evidence of wealth of the defendant. Even though the rule was announced by this court in 1854, we opine that it is sound today— and for the same reason. Liability for damages cannot be determined by the economic condition of either party.
>
> *    *    *    *    *    *
>
> Not only have our cases held that the wealth of a defendant is not admissible, but also have held inadmissible the poverty of a defendant.

*Southern Life & Health* at 1027.

Assuming *arguendo* that this Alabama rule applied only to J.T. Carr's pendent state claims and that the Federal Rules of Evidence would permit proof of Harvey's poverty or his wealth as relevant to J.T. Carr's § 1983 claim against Harvey for punitive damages, there would have been no realistic way to make the jury understand the distinction. By insisting on their Alabama tort claims for assault and battery and false imprisonment, plaintiffs, as a practical matter, simply precluded any opportunity they might otherwise have had to offer evidence of defendants' respective financial conditions.

### B.  *Evidence of Actual Personal Worth as Relevant to Punitive Damages*

Assuming *arguendo* that personal worth is proper evidence bearing on the amount of exemplary damages to be awarded in § 1983 cases and can be somehow separated from the Alabama evidentiary rule, there is still an important difference between evidence as to a defendant's actual, personal wealth for use in arriving at an appropriate amount of exemplary damages, i.e, the sum necessary to punish him by an invasion of his pocketbook, and evidence of insurance coverage or third-party indemnity, either of which very well might influence the jury to render a large punitive award, not accomplishing the purpose of punishing the tortfeasor but getting into the deep pockets of the indemnitor or of the insurance company.

### C.  *The Fact of Multiple Defendants in This Case*

J.T. Carr not only charged Officer Harvey with tortious and intentional misconduct which could potentially trigger punitive damages, but J.T. Carr made the same charges against all of the other defendants. Even in jurisdictions which allow evidence of a defendant's financial condition, the general rule is that where there are *joint* defendants, it is improper to consider the wealth or ability to pay of each individual defendant for assistance in determining the amount of exemplary damages. *Washington Gaslight Co. v. Lansden*, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543 (1899); *Ford Motor Credit Co. v. Hill*, 245 F.Supp. 796 (D.C.Mo.1965). J.T. Carr in his complaint sought to attribute the wrongful act of Harvey to the other defendants who arguably condoned it. An inquiry into the financial condition of Harvey would have invited, and would even have made necessary, an inquiry into the financial conditions of each of the other defendants. The evidence desk would have been piled high with individual financial statements, whether or not the jury could be asked to distinguish between defendants based on their respective abilities to pay. It would have been an evidentiary nightmare.

Only defendant Harvey even arguably "opened the door" to an inquiry into financial responsibility. His invitation, if it existed, cannot be attributed to the other defendants who could have been highly prejudiced by plaintiffs' Exhibit No. 56.

### D.  *Plaintiffs' Failure to List Exhibit No. 56*

■ The pre-trial order of March 17, 1989, entered pursuant to Rule 16(e), F.R. Civ.P., required the parties to designate in writing, and share with opposing counsel, their trial exhibits prior to trial. Plaintiffs never sought to have this pre-trial order

amended to permit a belated listing of the Council resolution. Plaintiffs did not list their proposed Exhibit No. 56. Rule 16(e) provides, *inter alia:*

> The order following a final pre-trial conference shall be modified *only to prevent manifest injustice.*

(emphasis supplied).

To have amended the pre-trial order to allow the admission of plaintiffs' Exhibit No. 56 would have been more likely to *cause* manifest injustice than to have *prevented* it. Not only did plaintiffs know about the existence of, and of the potential importance of, this municipal resolution within time to have listed it, but if it had been listed, defendants probably would have filed a motion *in limine* in order to obtain an advance ruling which probably would have obviated this evidentiary problem entirely, because it would have given defendants fair warning of the danger of their offering evidence respecting any defendant's poor financial condition. If plaintiffs' Exhibit No. 56 can be considered relevant at all, the relevance was just as apparent *before* the allegedly unanticipated "opening" created by defendants' counsel as it was *after* the "opening." Plaintiffs should not be excused for their failure to list this exhibit. It was properly excluded under Rule 16(e) without any other reason.

### E. *The Actual Meaning and Intent of the Council Resolution As Bearing on its Relevancy*

The resolution of April 15, 1986, did not, either in fact or law, actually indemnify Harvey and was therefore wholly irrelevant and inadmissible under any theory. Why? There are several reasons.

#### (1) Rule for Construing a Municipal Resolution

■ Alabama subscribes to the general rule that the powers of a municipal corporation are to be strictly construed, and that any ambiguity or reasonable doubt over a purported exercise of power is to be resolved against the grant of power. *State v. Homan*, 38 Ala.App. 642, 92 So.2d 51 (1957). Thus, the resolution of April 15, 1986, must be examined under a microscope which resolves any and all ambiguities against any undertaking by the City which was arguably beyond its power or authority. This court should not accuse the City of an *ultra vires* act unless absolutely necessary.

#### (2) Limitations on Municipal Liability in Alabama

■ Municipalities in Alabama, and in other states, not only have limited powers but have limitations placed on their liability to third parties. In Alabama, a municipality's liability is limited by Alabama Code § 11–47–192 to "damages for injury done or wrong suffered ... through the *neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty ..." (emphasis supplied). *See also Neighbors v. City of Birmingham*, 384 So.2d 113 (Ala.1980). The Legislature has thus chosen not to expose Alabama's municipalities to exemplary damages. The question, then, is, "Can a municipality consciously expose itself *indirectly* to a liability for which it cannot be exposed *directly*?" If so, such authority does not come from Article IV, Sec. 94, of the Alabama Constitution, which provides in pertinent part:

> The legislature shall not have power to authorize any county, city, town, or other subdivision of this state to lend its credit, or *to grant public money or a thing of value in aid of, or to any individual,* association, or corporation whatsoever ...

(emphasis supplied).

Amendment No. 112 to the Constitution, which amends Section 94, only repeats this limitation. Although in *City of Montgomery v. Collins*, 355 So.2d 1111 (Ala.1978), the Supreme Court of Alabama interpreted this constitutional limitation on municipal power so as not to preclude the expenditure of municipal funds to provide for the *cost of defending* a municipal official when such expenditure is deemed in the "proper corporate interest," the Supreme Court of Alabama has never carried the concept of "proper corporate interest" so far as to permit a municipality to indemnify its offi-

cial or employee from *actual liability for damages* to third parties arising out of a tort, much less resulting from intentional or wanton misconduct. There is a marked difference between providing the cost of *defense* and paying a *punitive judgment.* Any casualty insurance company would readily recognize this distinction. It is with this background and in this constitutional, statutory, and case-law context that this court must interpret the municipal resolution here in question. This resolution obviously could do no more than the Council was authorized by the law of Alabama to do. Therefore, when the Council undertook to indemnify an employee for his "negligent *and* wrongful acts" (emphasis supplied), the Council was necessarily recognizing that any act which creates personal liability, if it is to be indemnified by the City, must constitute *negligence,* something for which the municipality would be liable in any event under the theory of *respondeat superior,* that is, if the negligent act was performed within the line and scope of the employee's authority. An exception to *respondeat superior* is, of course, found in § 1983 cases where *Monell v. Dept. of Soc. Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), interferes with the theory of vicarious liability of the principal. When the Council of the City of Florence here used the conjunctive word "and," giving the word its ordinary meaning, the Council manifested an intent not to indemnify for an employee's wrongful act if that wrongful act constitutes more than mere negligence. Assuming *arguendo* that the Council could indemnify for mere negligence (the Supreme Court of Alabama may very well expand the "proper corporate interest" exception to permit indemnity for mere negligence), this interpretation of the resolution is the only interpretation possibly consistent with the constitutional and statutory limitations on the authority of Alabama's municipalities.

(3) Another Alabama Statute Which Limits Municipal Authority and Bears on the Interpretation of this Council Resolution

██  Another reason why the Council resolution of April 15, 1986, does not pro-vide the indemnity here hoped for by J.T. Carr arises from a combination of Alabama Code § 11–93–2, and a portion of the resolution itself, which reads:

> ... the City shall not be obligated to pay any claim or judgment ... after the applicable limit of the City's liability as provided by Statute has been exhausted ...

This portion of the resolution must be read *in pari materia* with Code § 11–93–2, which was effective on April 15, 1986, and which reads:

> The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth.

Not only does a municipality itself have no liability whatsoever for punitive damages, but § 11–93–2 places a limit of $100,000.00 on compensatory damages for personal injury. This means, of course, that the City of Florence expressly limited any possible indemnity to $100,000.00 for the bodily injury sustained by J.T. Carr. Under plaintiffs' best case scenario, Harvey's pocket was only $100,000 deep.

This court finds no need to resolve any ambiguity in favor of the City, because this court finds no ambiguity in its resolution. To this court, the Council clearly intended to indemnify only against compensatory damages arising out of mere negligence, and then only to the extent of $100,000.00

for bodily injury. This being true, what good would it have done J.T. Carr, the victim of Officer Harvey's slap, to prove to the jury that the City stood behind Harvey to the extent of $100.00 for what the jury found to be the compensatory damages sustained by J.T. Carr but not for any damages designed to punish Harvey or to deter Harvey from slapping some other citizen in the future? The office of punitive damages has always been to punish the individual perpetrator and not to punish his employer or his insurance carrier. The fact that the jury found J.T. Carr's *actual* damages to be $100.00 renders irrelevant *post hoc* the question of whether or not the City would have been required to pick up the tab for an award of punitive damages, even though this court has found that the Council resolution cannot be interpreted to provide such an expansive indemnity.

### (4) The Application of Rule 403, Federal Rules of Evidence

■ For the several reasons above explained, the Council resolution of April 15, 1986, was without real probative value. Although the court no longer harbors any doubts about the resolution's lack of relevance, assuming *arguendo* that the resolution does mean what plaintiffs think it means, and further assuming *arguendo* that it does not constitute an unauthorized act by the City, then it was nevertheless properly excluded under Rule 403, Federal Rules of Evidence, because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and waste of time. Its introduction would have immediately created a complex collateral issue which, in all probability, would have ended in a snipe hunt leading to a diverting of the jury's attention from the important issue, i.e., whether or not defendants were guilty of constitutional misconduct. An inquiry into the defendants' various abilities to pay would not only have unduly prolonged an already lengthy trial but would have generated more heat than light. Plaintiffs' Exhibit No. 56 was ready-made for an application of Rule 403. As the court stated during trial, this Council resolution, if ambiguous, would have necessitated a determination of its meaning by the jury. If the court is correct in its current belief that there is no ambiguity, and if the court had mistakenly allowed plaintiffs to introduce this exhibit into evidence, the jury would necessarily have been instructed at the conclusion of the evidence to ignore the exhibit. This scenario would have been as bad as the other possible scenarios. Once the court granted the City's motion for directed verdict based on *Monell*, the purported indemnity resolution would have been no more than a highly confusing element which might well have encouraged the jury to circumvent the verdict directed by the court in favor of the City by "sticking it" to Harvey if the jury were erroneously induced to believe that the City would pick up any tab for punitive damages assessed against Harvey.

### (5) The Futility of a Renewed Offer of Plaintiffs' Exhibit No. 56

There is one last reason for disagreeing with plaintiffs' motion for a new trial insofar as it is based on this disputed evidentiary ruling. If plaintiffs were granted a new trial before a new jury, defense counsel would never again come close to "opening the door" as they did during the first trial. A door, if opened at one trial before one jury, does not remain open for subsequent trials before other juries. To the extent, therefore, that the admissibility of plaintiffs' Exhibit No. 56 depends upon plaintiffs' "door opening" argument, the question would be academic at a new trial.

### J.T. Carr's Alternative Motion for an Additur

■ Insofar as J.T. Carr's alternative motion to increase the size of his $100.00 verdict is concerned, it must be denied. *Additur* is not permitted in the federal courts. *Hawkes v. F. Ayers*, 537 F.2d 836, 837 (5th Cir.1976), which cites *Dimick v. Schiedt*, 293 U.S. 474, 486–88, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935), states the rule thusly:

It is well-settled ... that the Seventh Amendment prohibits the utilization of

additur, at least where the amount of damages is in dispute.

There can be no question that the amount of damages in this case was in serious dispute. Therefore, *additur* here would be highly inappropriate, even if this court itself might have awarded more than $100.00 in compensatory damages to J.T. Carr for the slap.

### Plaintiff J.T. Carr's Amended Application for Attorneys' Fees

Plaintiffs' competent and dedicated counsel understandably do not seek attorneys' fees for the services they rendered to the admittedly non-prevailing eleven plaintiffs. They do seek attorneys' fees on behalf of J.T. Carr, the only one of the twelve who obtained a jury verdict and judgment. Plaintiffs' counsel obviously spent a great many hours and a large amount of money in preparing and trying this case. Avoiding any discussion of the possibility the plaintiffs will ultimately prevail against the County defendants in the remaining aspect of the case now on interlocutory appeal to the Eleventh Circuit, only one out of twelve plaintiffs has thus far obtained any recovery whatsoever, and he obtained only $100.00 against one defendant. It is J.T. Carr, therefore, who attempts to invoke 42 U.S.C. § 1988, and who seeks attorneys' fees in the amount of $236,442.75 and an expense reimbursement of $20,500.34.

■ There are several reasons why this court must decline to award J.T. Carr any attorneys' fees against Harvey or to reimburse Carr for expenses under 42 U.S.C. § 1988. First, on October 11, 1989, the City defendants, including Harvey, pursuant to Rule 68, F.R.Civ.P., offered judgment to all twelve plaintiffs in the aggregate sum of $75,000.00. That offer was rejected. Before being entitled to attorneys' fees, "a plaintiff must prevail on a *significant* issue in the litigation which achieved some of the benefit the parties sought in bringing suit." (emphasis supplied). *Finch v. City of Vernon,* 877 F.2d 1497, 1507 (11th Cir.1989). The most recent Supreme Court holding proves that *Finch* cannot mean that "purely technical or *de minimis* success on a legal claim

justifies the conclusion that the plaintiff is a prevailing party." *Texas State Teachers v. Garland Independent School District,* —— U.S. ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). This court cannot bring itself to characterize the $100.00 judgment in favor of one of twelve plaintiffs against one of eleven defendants as anything but "purely technical" or *"de minimis."* As far as accomplishing what the Congress sought to promote by enacting § 1988, it must be kept in mind that this court had already granted summary judgment before trial against Harvey for the Alabama tort of assault and battery, as well as for a violation of § 1983, and J.T. Carr had therefore accomplished his "technical" victory long before the large expenditure of trial time by his counsel. He could have accomplished a "real" victory if he could have persuaded his eleven co-plaintiffs to divide up $75,000.00.

It is difficult to think of a § 1983 plaintiff as "prevailing" when he recovers only $100.00 after having turned down his fair share of $75,000.00. He certainly cannot under any circumstances be considered the prevailing party for the purposes of attorneys' fees to the extent of the *"post-offer* services of his attorney." *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985) (emphasis supplied). In fact, this court has been unable to find a single case in which a plaintiff has been awarded attorneys' fees in a situation similar to this one.

If there is a legitimate attorneys' fee issue in this case, its resolution is made difficult by *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which deviates from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and recognizes that the degree of a plaintiff's success on the merits is a very important element in determining the amount of a reasonable attorneys' fee. From J.T. Carr's petition and his accompanying evidentiary materials, it is impossible for this court to determine, without indulging in speculation and conjecture, either how much of his attorneys' time was spent prior to the City defendants' Rule 68 offer,

or, more importantly, how much of that time was attributable to J.T. Carr's individual claim as contrasted to the time spent on the claims of the other eleven plaintiffs, or, just as importantly, how much time was attributable to pursuing the several defendants not associated with the City of Florence and still being pursued. This court, though not bound by the Second Circuit, is impressed by the Second Circuit's *apropos* expression in *Warner Bros., Inc. v. DAE Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir.1989), wherein that court discussed both *Hensley* and *Texas State Teachers Ass'n,* and concluded:

> Viewed in the light of the litigation as a whole, *Roth v. Pritikin,* 787 F.2d 54, 57 (2d Cir.1986), neither Warner's nor Dae Rim's success was sufficiently significant to mandate an award of attorneys' fees.

If the defendants (except Harvey) had filed a request for attorneys' fees under 42 U.S.C. § 1988, claiming to be prevailing parties, or for the recovery of costs incurred after their offer of judgment under Rule 68, they would probably have been as disappointed as J.T. Carr will be by this opinion. This is a case in which to leave the parties where the court finds them.

### Conclusion

An appropriate, separate order will be entered.