970 F.2d 512
 Michael ROMBERG; Debra Romberg, Plaintiffs-Appellees-Cross-Appellants,
v.
Robert NICHOLS; Dennis Lazzari; Hugh Lloyd; Johnny
Jurtado; Thomas Laing; Diane Hannon; R.D.
Campbell, Defendants-Appellants-Cross-Appellees.
 Nos. 90-56125, 91-55012.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 14, 1991.
Decided Jan. 13, 1992.
As Amended on Denial of Rehearing and
Rehearing En Banc July 7, 1992.
 
 Stephen Yagman, Yagman and Yagman, Venice, Cal., for plaintiffs-appellees-cross-appellants.
 Keith A. Fink, Cotkin, Collins & Franscell, Los Angeles, Cal., for defendants-appellants-cross-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: WALLACE, Chief Judge, THOMPSON and O'SCANNLAIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 A jury awarded the Rombergs nominal damages of one dollar each in their civil rights action against six Los Angeles police officers. The question before us now is whether that victory is too insignificant to deem the Rombergs a "prevailing party" for purposes of recovering attorney fees under 42 U.S.C. § 1988, in light of the Supreme Court's intervening decision in Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).[1] We conclude that it is not. We therefore affirm the district court's judgment to award fees. We also affirm the district court's determination of the amount of fees to be awarded for services through the date of the fee order. We remand, however, for calculation of fees due for subsequent proceedings.
 
 
 2
 * A
 
 
 3
 On a May evening in 1982, two Los Angeles police officers responded to a call indicating a domestic disturbance at the Rombergs' address.[2] When the officers arrived at the address, they found approximately ten people gathered in front of the building and pointing toward the Rombergs' apartment. They also heard loud voices and pounding noises, and they entered the building to investigate. As they ascended the stairway leading to the Rombergs' apartment, the officers heard a woman crying, a loud male voice, and once again, "some type of pounding." They also sensed an odor in the stairwell and hallway that resembled ether, a substance that they understood is often associated with narcotics.
 
 
 4
 After reaching the Rombergs' apartment, the two officers observed through a screen door a young woman seated on the floor with a man standing alongside her. The man, later identified as Michael Romberg, was allegedly yelling and shaking his fist at the woman. The woman, later identified as Debra Romberg, was only partially clad and was beating an object on the floor. The pair's behavior, coupled with the scent of ether, allegedly suggested to the officers that the Rombergs might be under the influence of drugs, specifically phencyclidene (or "PCP").
 
 
 5
 Out of concern for the woman's safety as well as for their own, the officers retreated and requested back-up units before proceeding further. Three units soon arrived, and before the first officers could fully explain what was happening, a loud crash and scream emanated from the Rombergs' apartment. Allegedly fearing that the woman had been seriously injured, the officers ran back up the stairs. When they could not see the woman, they decided to enter the apartment.
 
 
 6
 Mr. Romberg immediately resisted, telling the officers that they had no right to enter his home and poking one of the officers in the chest as the officer advanced in search of the woman. Two officers thereupon arrested and handcuffed Mr. Romberg for interfering with their search and for disturbing the peace. A male and female officer then located Mrs. Romberg in her bed, clothed her, and brought her out into the living room. At this point, another police officer observed on a coffee table what he identified as narcotics paraphernalia: a cocaine pipe, a small amber vial, and a beaker. After determining that Mrs. Romberg was not harmed, the officers then undertook to search the Rombergs' apartment for any further evidence of drugs. As it turned out, the Rombergs' apartment had not been the source of the suspicious odor.
 
 B
 
 7
 On December 23, 1983, the Rombergs filed suit, alleging that the police had violated their constitutional rights by not obtaining a search warrant before entering their home. They also alleged excessive force, conspiracy, malicious prosecution, and false arrest claims. The Rombergs named seven police officers and the County of Los Angeles as defendants and prayed for $2 million in general and punitive damages, plus costs and fees. The district court dismissed the County, one police officer, and most of the Rombergs' claims before trial, but it declined to dismiss the Fourth Amendment claim against the remaining defendants. In fact, the court denied consecutive motions to that effect at the pleading stage, the summary judgment stage, and the directed verdict stage.
 
 
 8
 After a four-day trial, the jury returned a verdict for the Rombergs with a nominal award of one dollar each. The amount of the award apparently followed the invitation of the Rombergs' attorney, who in his summation "[had] not ask[ed] for money, other than a perfunctory request for punitive damages." Romberg v. Nichols, No. 83-8448 at 1 (C.D.Cal. Jan. 20, 1989). Indeed, the Rombergs' attorney specifically informed the jury that, in his view, his clients were only entitled to damages " 'in some sum like one dollar.' " Id. at 2 (quoting trial transcript).
 
 
 9
 The district court then denied the defendants' alternative motions for j.n.o.v. and new trial and granted the Rombergs' motion for attorney fees. Romberg v. Nichols, No. 83-8448 (C.D.Cal. Nov. 30, 1987). The court, however, lowered the amount of the fee award from $45,000, the amount which the Rombergs had requested, to only $5,000. To account for this reduction, the court explained:
 
 
 10
 The court has some reason to question whether all the time claimed by counsel was warranted, but careful analysis of that is unnecessary. Suffice it to say: (i) the result achieved was fairly modest in tangible terms, (ii) it did not require exceptional legal talent to do it--(no reflection on counsel's well-documented expertise), [and] (iii) the award is just and reasonable in light of the claims put forth and the brevity of the trial.
 
 
 11
 Id. at 1.
 
 
 12
 The plaintiffs appealed, contending that this reduced fee award was insufficient, and a panel of this court, finding that it was "unable to review the order" as written, vacated and remanded with instructions for the district court to issue a more detailed order. Romberg v. Nichols, No. 87-6724 at 1 (9th Cir. Aug. 16, 1988) [855 F.2d 862 (table) ]. The court of appeals explained that effective review was not possible because the district court had not (a) set a lodestar figure and (b) specified the reasons for its reduction pursuant to an analysis of the twelve factors identified in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).
 
 
 13
 On remand, the district court issued a four-page order awarding the Rombergs attorney fees in the amount of $29,137.50.[3] Romberg v. Nichols, No. 83-8448 (C.D.Cal. Jan. 20, 1989). The court initially set a lodestar figure of $48,562.50, which represented all the hours claimed by the Rombergs' attorney (277.5) compensated at the rate of $175 per hour. The court then discounted this figure by forty percent pursuant to its evaluation of the Kerr factors.
 
 
 14
 Once again the defendants appealed, contending that in light of the Supreme Court's intervening decision in Texas State Teachers, the Rombergs are not entitled to any fees at all. The Rombergs, meanwhile, cross-appealed, insisting that the district court's fee award was still unjustifiably low. On May 25, 1990, this court again vacated the district court's order and remanded for a specific determination of whether Texas State Teachers does in fact indicate that the Rombergs are not entitled to recover any fees. Romberg v. Nichols, Nos. 89-55202 & 89-55218 (9th Cir. May 25, 1990) [904 F.2d 41 (table) ]. In so doing, we did not reach the issues raised in the Rombergs' cross-appeal, but we indicated that any future appeals would be handled on an expedited basis. See id. at 2.
 
 
 15
 On remand, the district court summarily rejected any suggestion that the Rombergs are not a prevailing party within the meaning of section 1988 and Texas State Teachers. Romberg v. Nichols, No. 83-8448 (C.D.Cal. Aug. 17, 1990). The defendants thereupon filed a timely notice of appeal (No. 91-55012) on September 11, 1990, and the Rombergs filed a timely cross-appeal (No. 90-56125) two weeks later on September 25.[4] Pursuant to the court's invitation in its order of May 25, the Rombergs also moved this court to expedite both appeals.
 
 
 16
 Deferring action on that motion, we ordered the parties on November 5, 1990 to submit simultaneous briefs in an effort to determine several issues including (a) whether the district court had intended its order of August 17, 1990 to reinstate its previous fee award of January 20, 1989, (b) whether any appeal or cross-appeal would be timely or appropriate at this juncture, and (c) what issues, if any, would now be ripe for review. Romberg v. Nichols, No. 90-56125 (9th Cir. Nov. 5, 1990). In their respective responses, the parties agreed that the district court's most recent order had reinstated its earlier fee award and that as such, it was a final order for which appellate review would now be appropriate. We accepted those contentions; effectively granted the motion to expedite; and ordered simultaneous briefing to address the underlying issues raised in the appeal and cross-appeal. Romberg v. Nichols, Nos. 90-56125 & 91-55012 (9th Cir. Dec. 27, 1990). After granting the Rombergs a brief continuance, we entertained oral argument and submitted the case for decision on May 14, 1991. Romberg v. Nichols, Nos. 90-56125 & 91-55012 (9th Cir. Apr. 16, 1991).
 
 II
 
 17
 * We review the factual findings underlying the district court's determination that a litigant is a "prevailing party" entitled to attorney fees under 42 U.S.C. § 1988 for clear error. Sablan v. Department of Finance, 856 F.2d 1317, 1324 (9th Cir.1988). We must reverse, however, if the district court applied incorrect legal standards to reach these findings. Lummi Indian Tribes v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983). Determination of the amount of a fee award under section 1988 is reviewable for an abuse of discretion. Jordan v. Multnomah County, 815 F.2d 1258, 1261 (9th Cir.1987).
 
 B
 
 18
 Section 1988 provides in relevant part that:
 
 
 19
 [i]n any action or proceeding to enforce [specified] provision[s] of [the federal civil rights laws, including 42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 20
 Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1988). Precisely what measure of success a litigant must achieve to attain "prevailing party" status under this provision has not always been clear. Must the litigant prevail on all of his claims, the majority of his claims, or may a single claim suffice? If victory upon a single claim may suffice, must that claim concern the "central" issue in the litigation, merely a "significant" issue in the litigation, or may it be simply any issue at all?
 
 
 21
 The Supreme Court recently attempted to answer these questions--and thereby resolve an intercircuit conflict--in Texas State Teachers, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866. There, the Court rejected the view expressed by the Fifth and Eleventh Circuits "that a party [must] succeed on the 'central issue' in the litigation and achieve the 'primary relief sought' to be eligible for an award of attorney's fees under § 1988." Id. at 784, 109 S.Ct. at 1489 (citing Simien v. San Antonio, 809 F.2d 255, 258 (5th Cir.1987), and Martin v. Heckler, 773 F.2d 1145, 1149 (11th Cir.1985) (en banc)). The Court found such a formulation of the fee-shifting rule inconsistent with its earlier pronouncements in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), in which the Court previously had "sought to clarify 'the proper standard for setting a fee award where the plaintiff has achieved only limited success.' " Texas State Teachers, 489 U.S. at 789-90, 109 S.Ct. at 1491 (quoting Hensley, 461 U.S. at 431, 103 S.Ct. at 1938).
 
 
 22
 In reaffirming Hensley, the Court unanimously opted to embrace the broader and less demanding standard endorsed by most of the other courts of appeals, including this one. See Lummi Indian Tribe, 720 F.2d at 1125, cited in Texas State Teachers, 489 U.S. at 784, 109 S.Ct. at 1489. Under this standard, "the plaintiff has crossed the threshold to a fee award of some kind" if he or she "has succeeded on 'any significant issue in litigation which achieve[s] some of the benefit the parties sought in bringing suit.' " Texas State Teachers, 489 U.S. at 791-92, 109 S.Ct. at 1493 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)); see also Lummi Indian Tribe, 720 F.2d at 1125 (quoting same).
 
 
 23
 The Court elaborated on its holding by stating that "at a minimum, to be considered a prevailing party within the meaning of 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Texas State Teachers, 489 U.S. at 792, 109 S.Ct. at 1493 (citation omitted). The Court added, however, that in some instances even this admittedly low standard might not be met because of the truly insignificant nature of a plaintiff's victory: "Where the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied." Id. (citations omitted).
 
 C
 
 24
 Applying the Supreme Court's generous formulation to the facts of this case, we hold that the Rombergs are indeed a "prevailing party" within the meaning of section 1988. The nature of their success in the underlying action is neither "purely technical" nor "de minimis." On the contrary, the Rombergs prevailed on a significant issue, and they prevailed on the merits before a jury. Most importantly, the Rombergs' victory fundamentally altered the legal relationship between themselves and the defendants: six Los Angeles police officers acting under color of state law were found liable of depriving the Rombergs of their Fourth Amendment rights.
 
 
 25
 On facts strikingly similar to the facts at issue here, the Second Circuit concluded that a plaintiff qualified as a "prevailing party" deserving of fees under Texas State Teachers. See Ruggiero v. Krzeminski, 928 F.2d 558, 564-65 (2d Cir.1991). In Ruggiero, a jury found that two New Haven police officers had violated the plaintiffs' Fourth Amendment rights by conducting an unlawful search of the plaintiffs' home, even though the officers had lawfully entered the home. Id. at 560-61. The jury awarded the plaintiffs no compensatory damages, but the district court, apparently following the Supreme Court's decision in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), awarded nominal damages in the amount of one dollar. Ruggiero, 928 F.2d at 561. The court then honored the plaintiffs' request for attorney fees in the amount of $12,833.34.[5] Id. at 564. On appeal, the Second Circuit affirmed both the judgment and the fee award, noting that "[t]he jury's determination that [the Ruggieros'] Fourth and Fourteenth Amendment rights were violated by the search conducted by the Officers assuredly is significant" and that "the jury's determination 'changes the legal relationship' between the Ruggieros and the Officers in that a violation of rights ha[s] been found." Ruggiero, 928 F.2d at 564. We find the Second Circuit analysis persuasive and hold that the Rombergs' eligibility to recover fees is equally clear in this case. See id.
 
 
 26
 The question only becomes close if one begins to confuse--as the defendants apparently have--the issue of liability with the issue of damages. The fact that the jury awarded the Rombergs only one dollar each in damages does nothing to vitiate the fact that the defendants were found liable on the merits of violating the Rombergs' civil rights. Despite the amount of the award, the Rombergs still prevailed on a significant legal issue, and that alone is sufficient. See id. The Supreme Court made this point clear in Texas State Teachers when it explicitly rejected the notion that the plaintiff must obtain "the primary relief sought"; the more appropriate inquiry, the Court explained, is whether the plaintiff has prevailed on "any significant issue." See 489 U.S. at 791, 109 S.Ct. at 1493.
 
 
 27
 Indeed, the Court's "issue-relief" distinction highlights a fundamental difference between civil rights litigation, on one hand, and general civil litigation, on the other. Victory in civil rights litigation is not always measurable in ordinary economic terms. As a plurality of the Court opined in City of Riverside v. Rivera:
 
 
 28
 we reject the notion that a [successful] civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053-1054, 55 L.Ed.2d 252 (1978). And, Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in 1988, over and above the value of a civil rights remedy to a particular plaintiff[.]" Hensley, 461 U.S. at 444, n. 4, 103 S.Ct. at 1945 n. 4 (Brennan, J., concurring in part and dissenting in part). Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.
 
 
 29
 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion). In fact, as the City of Riverside plurality also explained, the socially beneficial "deterrent effect [of civil rights suits] is particularly evident in the area of individual police misconduct, where injunctive relief generally is unavailable." Id. at 575, 106 S.Ct. at 2694 (plurality opinion); see also Nephew v. City of Aurora, 830 F.2d 1547, 1549 (10th Cir.1987) (en banc) ("vindication [of civil rights] often can include important social benefits that are not reflected in nominal damages"), cert. denied, 485 U.S. 976, 108 S.Ct. 1269, 99 L.Ed.2d 481 (1988).
 
 
 30
 The dispositive inquiry for section 1988 purposes, therefore, focuses upon the legal issues at stake, not upon the prayer for relief. It focuses upon the liability stage of the proceedings, not upon the damages stage. Thus, although the Rombergs obtained virtually no monetary success and although most of their allegations never reached trial, the jury's affirmative determination that the defendants violated the Rombergs' important civil rights is enough to render the Rombergs eligible for an award of fees. See Ruggiero, 928 F.2d at 564 ("Simply because the jury found that the Ruggieros did not establish their claims in all respects does nothing to lessen the significance, or importance, of the Ruggieros' success."). As the Supreme Court explained in Texas State Teachers:
 
 
 31
 The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of a fee award, not to the availability of the award ... vel non.
 
 
 32
 489 U.S. at 792-93, 109 S.Ct. at 1493; see also Robinson v. Ariyoshi, 933 F.2d 781, 783-84 (9th Cir.1991).
 
 
 33
 Properly focusing upon the "legal relationship" between the parties--and not upon the degree of monetary success achieved by the Rombergs--we hold that the Rombergs prevailed on a significant issue within the meaning of Texas State Teachers. In the realm of civil rights, where Congress and the courts historically have sought to encourage the vindication of society's most cherished principles for their own sake, a nominal damages award does not a nominal victory make. See Scofield v. City of Hillsborough, 862 F.2d 759, 766 (9th Cir.1988) ("An award of nominal damages to [the plaintiff] ... does not diminish [the plaintiff's] eligibility for attorney fees when no special circumstances are shown to make the award of fees unjust."); Bilbrey v. Brown, 738 F.2d 1462, 1472 (9th Cir.1984) (attorney fees may be awarded even where damages are nominal); cf. Floyd v. Laws, 929 F.2d 1390, 1402-03 (9th Cir.1991) (where jury's special verdict awarded prevailing plaintiff zero damages, plaintiff was entitled to recover one dollar in nominal damages and a reasonable attorney fee).
 
 
 34
 To the extent that other courts have declined to adopt this reasoning, we decline to follow them. See, e.g., Estate of Farrar v. Cain, 941 F.2d 1311 (5th Cir.1991) (denying recovery of fees after one-dollar judgment); Denny v. Hinton, 131 F.R.D. 659 (M.D.N.C.1990) (characterizing one-dollar judgment as de minimis under Texas State Teachers and denying recovery of fees), aff'd mem., Denny v. Elliott, 937 F.2d 602, and Lawrence v. Hinton, 937 F.2d 603 (4th Cir.1991); Carr v. City of Florence, 729 F.Supp. 783, 791 (N.D.Ala.1990) (characterizing $100 judgment as de minimis under Texas State Teachers and denying recovery of fees), aff'd mem., 934 F.2d 1264 (11th Cir.1991). In so doing, however, we disavow no great wealth of authority. Only the Fifth Circuit has rejected the position that an award of nominal damages makes the plaintiff a "prevailing party" within the meaning of section 1988. Farrar, 941 F.2d at 1311. We believe Farrar, which rested on the assumption that "the sole object of [the] suit [was] to recover money damages," id. at 1315, is distinguishable on that basis.
 
 
 35
 The other circuit court decisions upon which defendants' briefs rely are facially distinguishable. In Crabtree v. Collins, 900 F.2d 79, 82-83 (6th Cir.1990), the district court dismissed the plaintiff's action on mootness grounds, and the court of appeals concluded that the plaintiff was not a prevailing party. Similarly, in Higgs v. Bland, 888 F.2d 443, 451 (6th Cir.1989), the court of appeals affirmed the denial of an award of fees where the plaintiffs' only success had been to obtain a judicial "suggestion" that the defendants' should modify the challenged practice.[6] By contrast, the underlying district court judgment in the present action is a jury verdict for the plaintiffs on the merits of their claim.
 
 D
 
 36
 The ultimate infirmity in the defendants' argument stems from the fact that the real focus of their attack is not the district court's fee order at all, but the jury's verdict.[7] In his summation, the Rombergs' attorney informed the jury that:
 
 
 37
 Mr. and Mrs. Romberg in this case don't want any money. They want you to vindicate their rights. If you find their rights were violated, you can award what's called nominal damages in some sum like one dollar. And I think that's all they're entitled to in this case, is nominal damages.
 
 
 38
 The defendants suggest that, without this invitation, the jury might have awarded a verdict in their favor. The district court appears to have agreed. Commenting on these closing remarks by the Rombergs' attorney when it entered its $29,000 fee order, the district court stated:
 
 
 39
 While the court does not doubt counsel's overall sincerity in this part of the argument[,] his request gave the jury a clear opportunity for a Solomonic solution. In this court's view the officers involved were acting out of genuine concern for human safety during the incident[,] and if their actions were a technical violation of the Fourth Amendment[,] that was wholly unintended. It is very likely that the jury would have returned a defense verdict but for the option of the one-dollar award, which was very pointedly suggested to them.
 
 
 40
 Romberg v. Nichols, No. 83-8448 at 2 (C.D.Cal. Jan. 20, 1989).
 
 
 41
 Part of a district court's function, however, is to prevent such "Solomonic solutions" by the jury. When a jury compromises its verdict, its verdict should not stand. See 6A J. Moore & J. Lucas, Moore's Federal Practice 59.08, at 113 (2d ed. 1991) ("a new trial should be granted where it appears by legally competent proof or deduction that the verdict is the result of a compromise"); National R.R. Passenger Corp. v. Koch Indus., 701 F.2d 108, 110 (10th Cir.1983) ("A compromise judgment is one reached when the jury, unable to agree on liability, compromises that disagreement and enters a low award of damages.... [S]uspicion should be aroused if the jury awards only nominal damages."). If the district court believed that there was insufficient evidence to support the jury's conclusion that the Rombergs' Fourth Amendment rights had been violated, then it should have granted the defendants' motion for a judgment non obstante veredicto. Alternatively, the court could have granted the defendants' motions for summary judgment, directed verdict, or new trial--all of which the court denied.
 
 
 42
 This court, however, cannot reach beyond the legal question currently before it in order to review whether the district court should have granted one of those motions. The record establishes that the jury found for the Rombergs and that their verdict was entered as the judgment of the district court, and on the basis of that record, the Rombergs are a prevailing party eligible to recover fees under section 1988.
 
 
 43
 Lest there be any doubt, however, we are not unsympathetic to the plight of district courts faced with situations like the one presented here. When a civil rights attorney who recognizes that his own case is not especially strong drastically reduces his initial claims and asks the jury for nominal damages, the danger that he may have done so simply to try to preserve prevailing-party status is disturbingly real. In such cases, the "generous formulation" of Texas State Teachers is subject to abuse. Section 1988 was not intended as an artifice by which some plaintiffs' attorneys might line their own pockets through the pursuit of questionable claims, and it is hardly meant to reward lawyers who, in the later stages of the fight, abandon their clients' interests to pursue their own when the battle seems otherwise lost.
 
 
 44
 We also recognize that the means by which district courts may prevent such abuses are limited. For example, we have recently held that it is reversible error for a district court to inform the jury of the plaintiff's eligibility to recover fees upon prevailing, thereby precluding any use of jury instructions as a means of reducing the risk of abuse. Brooks v. Cook, 938 F.2d 1048, 1050-53 (9th Cir.1991). We have also recently held that even where a jury specifically finds that the plaintiff has suffered no actual damages, a district court must award nominal damages and should provide a reasonable attorney fee so long as the jury finds a constitutional violation. Floyd, 929 F.2d at 1400-03.
 
 
 45
 Nonetheless, while the risk for abuse is real and while some of our decisions may indirectly limit the means by which district courts may fight that risk, district courts are not powerless in their efforts to prevent section 1988 abuses. If the Rombergs did not deserve to prevail, then they should not have, and the verdict in their favor should have been set aside. Instead, the jury's verdict was entered as the final judgment of the court, and the court itself expressly ruled that the Rombergs are a prevailing party. The time for questioning whether the Rombergs should have prevailed is now long past.III
 
 
 46
 * Having determined that the Rombergs are indeed a prevailing party within the meaning of section 1988, we must next address the question raised by the Rombergs' cross-appeal: whether the district court abused its discretion in determining the amount of the fee award.
 
 
 47
 The district court's August 1990 reinstatement implicitly adopted the reasoning and conclusions of its January 1989 order. In that earlier order, the court granted the Rombergs a recovery of $29,137.50. In arriving at this figure, the court reduced the lodestar figure of $48,562.50, representing all of the hours claimed by the Rombergs' attorney (277.5) compensated at the rate of $175 per hour, by forty percent.
 
 
 48
 When setting a fee, the district court must first set the presumptive lodestar figure. Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir.1988) (Cunningham ), cert. denied, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). This is done "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Id. Next, in rare cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, 526 F.2d 67, 69-70 (9th Cir.1975) (Kerr ), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), "that have not been subsumed in the lodestar calculation." Cunningham, 879 F.2d at 484. When reducing the lodestar, the district court must state "which factors it is relying on and explain[ ] its reasoning." Id. at 487.
 
 
 49
 As a general rule, while the courts are given "latitude to balance and weigh permissible factors, any reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." Id. The Supreme Court has stated that "the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (Delaware Valley ) (internal quotations omitted). However, in certain "exceptional cases," a district court may adjust the lodestar based upon some of these "subsumed" factors. Cunningham, 879 F.2d at 489 (the lodestar may be adjusted based upon the "results obtained" in "exceptional" cases). But the district court must explain why the factor is not adequately reflected in the lodestar. Id.
 
 
 50
 The primary concern of the appellate courts, therefore, appears to be that the district court not consider the "subsumed" factors both when it sets the lodestar and when it examines the increasing or reducing factors. See Delaware Valley, 478 U.S. at 566, 106 S.Ct. at 3099; Cunningham, 879 F.2d at 489. Whether the district court engaged in such double counting must be our primary inquiry in determining whether a remand is necessary. See Delaware Valley, 478 U.S. at 566, 106 S.Ct. at 3099; Corder v. Gates, 947 F.2d 374, 378 (9th Cir.1991) (Corder ); Cunningham, 879 F.2d at 489.
 
 
 51
 Although the district court failed to follow strictly the approach outlined above, there is no evidence of double counting and the fee award appears to be justified. Contrary to the dissent's assertion, the district judge did not concede that the hours worked and rate charged were reasonable. Rather than making a separate finding that the hours worked and the rate charged were reasonable, the district court considered all twelve Kerr factors together. When the district judge stated that he was accepting the hours worked at "face value," he was not holding that the hours worked were reasonable in light of the novelty of the issues, the results obtained, and the other Kerr factors that have been held to be subsumed in the calculation of the lodestar. See Delaware Valley, 478 U.S. at 565, 106 S.Ct. at 3098; Jordan v. Multnomah County, 815 F.2d 1258, 1262 & n. 6 (9th Cir.1987). Rather, the district court was merely acknowledging the assertion of the number of hours spent on the case and what the attorney believed was a reasonable hourly fee. Therefore, the district court was not engaging in double counting by reducing the award by forty percent based upon novelty and difficulty of the issues, skill requisite to perform the services, and results obtained.
 
 
 52
 Nor was the district court's justification of the basis for reduction of the award insufficient. "Although the district courts must be given much discretion to shape awards of attorney's fees, these awards must be subject to appellate review, and they must be reversed if based on clearly erroneous considerations." Corder, 947 F.2d at 380. In this case, however, the district court articulated "sound reasons" in support of the fee award. See id.
 
 
 53
 First, the district judge reduced the fee award based upon the lack of novelty of the issues. Romberg v. Nichols, No. CV83-8448 RG, at 2 (C.D.Cal. Jan. 20, 1989) (order awarding attorney's fees) (Romberg ). The dissent contends that the district judge concluded that the issues were not novel merely because the Rombergs' attorney requested only nominal damages. However, the district judge's order does not state that the request for nominal damages is the only reason that the case is not novel. This was a relatively simple and uncomplicated case. Thus, the district judge's conclusion that the case was not novel is a valid justification for reducing the fee award.
 
 
 54
 Second, the district judge found that the third Kerr factor, the skill requisite to perform properly the services, justified a reduction. Id. at 3; see Kerr, 526 F.2d at 70. The district judge explained that the Rombergs' attorney "should have realized that there was little or nothing to support the claims that never got to the jury." Romberg, No. CV83-8448 RG, at 3. The dissent contends that the district judge was essentially reducing the award to take into account the time spent on claims that were dismissed. The dissent concludes that this was double counting because the district judge had already determined that the elements comprising the lodestar were reasonable and the hours used to calculate the lodestar did not include time spent on the dismissed claims. However, as discussed above, the district judge did not determine that the elements used to calculate the lodestar were reasonable. Therefore, the district judge was not double counting. Moreover, the dissent has missed the point: the district judge was merely examining all of the relevant facts to determine whether the fee was reasonable in light of the skill requisite to properly perform the legal services. Thus, the district court's analysis was not based on clearly erroneous considerations.
 
 
 55
 Finally, the district judge determined that the result obtained warranted reducing the lodestar. Id. Clearly, the result obtained is a legitimate factor to be considered by a district judge. See, e.g., Cunningham, 879 F.2d at 486, 488-89. The dissent contends that the district judge reduced the award merely because the Rombergs were awarded nominal damages. However, the "vindication" obtained by the Rombergs also does not appear to have resulted in any highly significant benefit to the Rombergs or society in general. The district court's decision, therefore, was justified.
 
 
 56
 The reducing factors relied upon by the district judge would have been permissible justifications to reduce the elements used to arrive at the lodestar figure. See Delaware Valley, 478 U.S. at 565-66, 106 S.Ct. at 3098; Cunningham, 879 F.2d at 484-86. The district court merely chose to reduce the lodestar itself rather than the individual figures used to calculate it. This is an unusual case where it is clear that there has been no double counting and a consideration of the factors indicates that the fee award was clearly warranted. As we have stated before:
 
 
 57
 Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success. What matters is that the district court did not "count" for lack of success twice. We therefore hold that the district court's reduction of the lodestar, if warranted, constitutes a "harmless error."
 
 
 58
 Cabrales v. County of Los Angeles, 864 F.2d 1454, 1465 (9th Cir.1988), vacated on other grounds, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989), reinstated, 886 F.2d 235 (9th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990). Therefore, although the district court did not follow the correct methodology, we believe that under the facts of this case, "any error was harmless." Corder, 947 F.2d at 378.
 
 
 59
 Based on this analysis, how should we review the action of the district court? Clearly it is whether the district court abused its discretion. Id. at 377. In making this assessment, we are to be guided by three principles:
 
 
 60
 First, discretionary judgments of the district courts, which watch civil rights cases unfold before them, must be respected. Second, the discretion of the district courts must not be unduly limited by mechanistic rules. Third, fee awards must ensure that civil rights lawyers receive reasonable compensation for their services. This third principle limits the district court's discretion, for this third principle underlies the requirement that the district courts carefully calculate hours and rates and fully articulate their reasoning.
 
 
 61
 Id. at 378 (emphasis in original; footnote omitted). Based upon these principles, we hold that there was no abuse of discretion. We must be careful not to drift into a more restricted standard of review, but should allow the district court the discretion we assert it has to settle fees.
 
 B
 
 62
 As a final consideration, we must determine (a) whether all of the myriad proceedings in this litigation represent compensable legal work and (b) whether a further assessment should be ordered to compensate the Rombergs' attorney for the delay suffered in having to wait for his recovery.
 
 
 63
 * The first question is significant because, in its order of January 20, 1989, the district court apparently did not allow the Rombergs any compensation for their defense of the initial appeal to this court or for the subsequent remand. Furthermore, because the district court's August 1990 order essentially reinstated the January 1989 order, the current fee award fails to compensate the Rombergs' attorney for any of the proceedings that have followed January 1989.
 
 
 64
 In light of our recent decision in Cabrales v. County of Los Angeles, 935 F.2d 1050 (9th Cir.1991), we hold that the Rombergs are entitled to recover fees for these additional stages of the proceedings as well: "a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." Id. at 1053.[8]
 
 2
 
 65
 Turning to the question of compensation for delay, the law undeniably authorizes such a recovery where it is appropriate. As the Supreme Court recently explained:
 
 
 66
 Clearly, compensation received several years after the services were renderedas it frequently is in complex civil rights litigation--is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment--whether by the application of current rather than historic hourly rates or otherwise--is within the contemplation of [section 1988].
 
 
 67
 Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 283-84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989) (footnote omitted); see also Spain v. Mountanos, 690 F.2d 742, 747-48 (9th Cir.1982) (awarding interest on attorney fees under 42 U.S.C. § 1988). Accordingly, the district court should account for the propriety of an interest adjustment to compensate for the delay in recovery on remand.
 
 IV
 
 68
 We affirm the district court's judgment that the Rombergs are a prevailing party within the meaning of section 1988 and Texas State Teachers. We also affirm the district court's calculation of the fee award for proceedings up to the January fee award order. We remand, however, for calculation of an appropriate fee award for subsequent proceedings, as well as appropriate compensation for delay.
 
 
 69
 AFFIRMED and REMANDED for further proceedings.
 
 WALLACE, Chief Judge, concurring:
 
 70
 I concur in the majority opinion except I agree only with the result in part II that the Rombergs were prevailing parties entitled to a fee award under 42 U.S.C. § 1988. I write separately on this issue because I do not fully agree with the majority's reasoning.
 
 
 71
 In part II, the majority holds that the Rombergs are prevailing parties because they prevailed on a significant issue in the litigation. I agree with this conclusion.
 
 
 72
 In Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (Texas State Teachers ), the Supreme Court held that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit, the plaintiff has crossed the threshold to a fee award of some kind." Id. at 791-92, 109 S.Ct. at 1493 (internal quotations omitted). The Court explained that "at a minimum, ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Id. at 792, 109 S.Ct. at 1493.
 
 
 73
 The Supreme Court, however, limited its holding by stating that "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied." Id. Therefore, under certain conditions even a victory on a constitutional issue may be considered de minimis. For example, the Court stated that the Texas State Teachers Association would not have been considered a prevailing party if the Association's only success was the district court's conclusion "that the requirement that nonschool hour meetings be conducted only with prior approval from the local school principal was unconstitutionally vague." Id. The Court explained that this success would be considered de minimis because "[t]he District Court characterized this issue as of minor significance and noted that there was no evidence that the plaintiffs were ever refused permission to use school premises during non-school hours." Id. (internal quotations omitted).
 
 
 74
 Under the standards established in Texas State Teachers, I believe that the Rombergs were prevailing parties. The jury found that the police officers violated the Rombergs' constitutional rights and awarded the Rombergs nominal damages of one dollar each. There is an intercircuit conflict on whether a party is entitled to prevailing party status when he or she is only awarded nominal damages. See, e.g., Estate of Farrar v. Cain, 941 F.2d 1311, 1315-17 (5th Cir.1991) (declining to award attorney's fees); Ruggiero v. Krzeminski, 928 F.2d 558, 564-65 (2d Cir.1991) (awarding attorney's fees). However, nothing in Texas State Teachers persuades me that the Rombergs should be denied prevailing party status merely because they were only awarded nominal damages. The Rombergs prevailed on a significant issue in the litigation. As pointed out by the majority, "the Rombergs' victory fundamentally altered the legal relationship between themselves and the defendants: six Los Angeles police officers acting under color of state law were found liable of depriving the Rombergs of their Fourth Amendment rights." This is hardly similar to the example of a de minimis victory given by the Supreme Court in Texas State Teachers. See Texas State Teachers, 489 U.S. at 792, 109 S.Ct. at 1493.
 
 
 75
 But I believe the majority's emphasis of the "issue-relief" distinction is misleading. The key to the prevailing party inquiry is determining whether the plaintiff "succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." Id. at 791-92, 109 S.Ct. at 1493 (internal quotations omitted). In making this determination, we almost certainly would have considered the magnitude of the award relevant if the Rombergs were awarded five million dollars in damages. The majority's analysis appears to make the consideration of the magnitude of the award irrelevant.
 
 
 76
 I also believe that the discussion of compromise verdicts in part II D of the majority opinion is unnecessary to the decision in this case and misleading. The only question before us is the propriety of the fee award. Nichols has not properly raised the issue of whether the verdict should be overturned as a compromise verdict. As the majority opinion recognizes, we "cannot reach beyond the legal question currently before" us and "[t]he time for questioning whether the Rombergs should have prevailed is now long past." The majority's discussion is completely unnecessary and should be considered as mere dicta.
 
 
 77
 O'SCANNLAIN, Circuit Judge, dissenting in part:
 
 
 78
 I dissent only from Part IIIA of the court's opinion which affirms the forty percent reduction of the fee award. In my view, the reasons cited by the district court were insufficient to justify departure from the presumptively reasonable lodestar figure.
 
 
 79
 * In calculating the fee award, the district court first set a lodestar figure of $48,562.50, representing all of the hours claimed by the Rombergs' attorney (277.5) compensated at the rate of $175 per hour. In so doing, the court expressly "accepted at face value" the hours submitted by the Rombergs' attorney and expressly selected the $175 rate. Romberg v. Nichols, No. 83-8448 at 2, 3 (C.D.Cal. Jan. 20, 1989). The court then specifically addressed all twelve of the factors identified by the Kerr court as relevant to any departure from the lodestar.[1] See Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975) (adopting twelve factors identified by the Fifth Circuit as appropriate for this purpose in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974)), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); see also Hensley v. Eckerhart, 461 U.S. 424, 429-30, 103 S.Ct. 1933, 1937-38, 76 L.Ed.2d 40 (1983) (noting that the Senate and House Reports on section 1988 both favorably cited the twelve Johnson factors).
 
 
 80
 The court determined that three of the factors justified a reduction of the fee: (a) the novelty and difficulty of the questions involved, (b) the skill requisite to perform the legal services properly, and (c) the amount involved and the results obtained. See Kerr, 526 F.2d at 70 (the second, third, and eighth factors). The Rombergs now contend that the district court abused its discretion in using these three factors to reduce the lodestar by forty percent. I agree.
 
 
 81
 In Jordan v. Multnomah County, 815 F.2d 1258 (9th Cir.1987), we acknowledged that "[a] 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee." Id. at 1262 (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)). Although the district court has broad discretion to determine the amount of a fee award, it must justify any departure from the lodestar figure if the hours and rate that determine the lodestar are themselves reasonable. See Delaware Valley Citizens' Council, 478 U.S. at 564-65, 106 S.Ct. at 3098; Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); see also Long v. IRS, 932 F.2d 1309, 1313-14 & n. 4 (9th Cir.1991) (per curiam). This justification must include more than a bare statement of the Kerr factors relied on; the district court must also supply an explanation of the application of those factors to the case. See Cunningham v. County of Los Angeles, 879 F.2d 473, 488 (9th Cir.1988). Here, in light of the district court's own admission of the reasonableness of both the hours claimed and the rate to be applied, I conclude that the court's purported justifications are inadequate to support its forty-percent downward departure.
 
 
 82
 * In discussing the second Kerr factor, the district court explained:
 
 
 83
 2. The case was not novel. It did take skill under the circumstances, but the above observation about the jury's option [to produce a Solomonic solution by awarding nominal damages] is a reducing factor.
 
 
 84
 Romberg v. Nichols, No. 83-8448 at 2 (C.D.Cal. Jan. 20, 1989). The court's analysis here is a non sequitur that appears to penalize the Rombergs for having prevailed in the first place. The court first states that "[t]he case was not novel" and then concludes that because the Rombergs' attorney invited nominal damages, that invitation constitutes a reducing factor. An attorney's request for nominal damages at the end of a trial, however, says nothing about the "novelty and difficulty of the questions involved"; there is no logical connection here. More importantly, reducing the fee award on the basis of a belief that the jury would have found for the defendants if not presented with the option of awarding nominal damages is clearly impermissible. As we explained ante, at Part II-D of the court's opinion, if a district court concludes that the evidence does not support the jury's verdict, the appropriate course of action is to set aside the verdict--not to penalize the prevailing attorney.
 
 B
 
 85
 With respect to the third Kerr factor--"the skill requisite to perform the legal services properly"--the district court explained:
 
 
 86
 3. Mr. Yagman is a skilled and effective civil rights lawyer. As such, however, he should have realized that there was little or nothing to support the claims that never got to the jury--again, a significant reducing factor.
 
 
 87
 Romberg v. Nichols, No. 83-8448 at 3 (C.D.Cal. Jan. 20, 1989). The Rombergs maintain that this reduction is also impermissible because none of the 277.5 hours billed was spent on claims that did not proceed to trial. This argument is equally meritorious. If the lodestar does not include the hours spent on dismissed claims, then any subsequent reduction for those hours constitutes double discounting. In any event, the proper stage at which to reduce a fee award for time that is not compensable is during the calculation of the lodestar. Here, the court expressly found that the elements comprising the lodestar were reasonable. A subsequent discount by an undefined percentage on the basis of alleged overbilling is inconsistent with that determination and cannot suffice to rebut the presumption of correctness acknowledged by this court in Jordan.
 
 C
 
 88
 Finally, in applying the eighth Kerr factor--"the amount involved and the results obtained"--the district court concluded:
 
 
 89
 8. The results obtained were (i) $2.00 in cash and (ii) "vindication." If all plaintiffs wanted was vindication they could have made the case a straight-forward Fourth Amendment claim from the outset. This is clearly a reducing factor.
 
 
 90
 Romberg v. Nichols, No. 83-8448 at 3 (C.D.Cal. Jan. 20, 1989). The Supreme Court, however, has expressly "reject[ed] the proposition that fee awards under 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." City of Riverside v. Rivera, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion); see also id. at 585, 106 S.Ct. at 2699-2700 (Powell, J., concurring in judgment and similarly rejecting a proportionality rule). This court has gone even one step further, recognizing that although the size of an award can be a permissible consideration, the smallness of an award alone cannot justify reduction of the attorney's fee. See Jordan, 815 F.2d at 1262 & n. 6 (citing Hensley and noting that the second, third, eighth, and ninth factors identified in Johnson and Kerr "cannot serve as independent bases for adjusting fee awards"); see also Long, 932 F.2d at 1314 & n. 4 (explaining same). The substance of the prevailing claim, rather than the amount of relief received, is the central concern for section 1988 purposes. See Greater Los Angeles Council on Deafness v. Community Television, 813 F.2d 217, 222 (9th Cir.1987). Indeed, as the Supreme Court recently explained, "[t]he intention of Congress [in enacting section 1988] was to encourage successful civil rights litigation, not to create a special incentive to prove damages ..." Blanchard v. Bergeron, 489 U.S. 87, 95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989). What the attorney has earned is a wholly independent consideration from what the jury believes his clients have suffered.
 
 II
 
 91
 In light of these considerations, I would reverse the district court's fee determination, and remand for recalculation in a manner consistent with the foregoing analysis of the law of this circuit.
 
 
 
 [1]
 This appeal presents what is largely a question of first impression in this circuit. Only five prior decisions by this court have addressed Texas State Teachers. See Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir.1991); Robinson v. Ariyoshi, 933 F.2d 781 (9th Cir.1991); Duran v. City of Douglas, 904 F.2d 1372 (9th Cir.1990); Lear Siegler, Inc. v. Lehman, 893 F.2d 205 (9th Cir.1990); Herrington v. County of Sonoma, 883 F.2d 739 (9th Cir.1989). None of these cases addressed the Supreme Court's decision in any detail, and only three concerned those portions of the Court's holding that are relevant to this appeal. See Sanchez, 936 F.2d at 1041 (summarily ruling that denial of attorney fees to victorious plaintiff was abuse of discretion under Texas State Teachers ); Robinson, 933 F.2d at 784-85 (finding no entitlement to fees under Texas State Teachers where subsequent decision had vacated previous favorable judgment on ripeness grounds); Lear Siegler, 893 F.2d at 208 (finding no entitlement to fees under Texas State Teachers where plaintiff was "granted no relief in its underlying ... claim and [where] its efforts resulted in no change in [the defendant's] procedures"); see also Duran, 904 F.2d 1379 (citing Texas State Teachers for proposition that attorney fees may be awarded pendente lite); Herrington, 883 F.2d at 742 (same). A number of district courts within this circuit have considered Texas State Teachers more thoroughly. See, e.g., Achaval-Bianco v. Gustafson, 736 F.Supp. 214, 215 (C.D.Cal.1989) (finding entitlement to fees under Texas State Teachers where plaintiffs had received some benefit on some claims before settlement of litigation). Even these decisions, however, provide little guidance on how to apply Texas State Teachers
 
 
 [2]
 The Rombergs were not married at the time these events took place. Nonetheless, we refer to them as "the Rombergs" and as "Mr. and Mrs. Romberg" for convenience
 
 
 [3]
 Nichols argues that the remand order did not permit the district court to increase its fee award to this extent. This argument is without merit. The order left the district court free to adjust the award as it saw fit upon consideration of the relevant factors
 
 
 [4]
 Due to an administrative error, the defendants' appeal was not assigned a docket number when it was originally filed. The error was not corrected until after the Rombergs had filed their cross-appeal. Accordingly, the defendants' appeal (No. 91-55012) has a higher docket number than the Rombergs' cross-appeal (No. 90-56125). The record reveals that despite this error both the appeal and the cross-appeal are timely
 
 
 [5]
 Interestingly, the court compensated the Ruggieros' attorney at the same hourly rate ($175) that the district court applied here. See infra at 522
 
 
 [6]
 Our recent decision in Robinson is similar to the Sixth Circuit's decisions in Crabtree and Higgs, and as a result, is similarly unavailing to the defendants. In Robinson, we held that (a) in a circumstance similar to that in Crabtree, "[t]he victories won by plaintiffs were ... swept away by application of the ripeness doctrine" and (b) in a circumstance similar to that in Higgs, "[a] mere 'concession' as to the effects of future, unfiled legal proceedings, even if made by a responsible official, does not amount to 'prevailing' in litigation in which the pleader took nothing." 933 F.2d at 783-85. Like the plaintiffs in Crabtree and Higgs (and unlike the Rombergs here), the plaintiffs in Robinson failed to procure a substantive judgment in their favor on any underlying issue, or otherwise achieve any success in the litigation, and therefore did not "prevail" in any significant sense
 
 
 [7]
 The concurring opinion incorrectly states that this issue was not raised on appeal. On the contrary, defendants' brief repeatedly suggested that the jury would have brought in a defense verdict if not for the invitation extended by the Rombergs' attorney to award nominal damages. See Cross-Appellees' Brief and Appellants' Opening Brief at 7, 17, 19-22
 
 
 [8]
 In holding that an attorney is entitled to recover fees for efforts expended on unsuccessful intermediate stages of litigation, Cabrales did not hold that an attorney is entitled to recover fees for efforts expended on all unsuccessful claims and legal theories that the attorney at one time may have raised or pursued. The notion that we embraced in Cabrales is that an attorney should be compensated for those efforts that reasonably may be considered to be steps along the path to ultimate victory, whether or not every individual step was itself successful. See Cabrales, 935 F.2d at 1053. That does not mean, however, that the court must compensate the attorney for efforts expended on extraneous and dismissed claims that did not contribute to the victory. The proper focus is upon time expended on efforts that ultimately proved successful
 
 
 [1]
 The majority interprets the district court's order as considering the Kerr factors simultaneously with setting the lodestar. Although I disagree with this interpretation, it is immaterial to the result. Whatever the order in which the award amount was calculated, the reducing factors relied on were impermissible in light of the district court's concession that the hours claimed and fee set were reasonable