**DREAM PALACE; et al., Plaintiffs—Appellants,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, Defendant—Appellee.**

**No. 07–15802.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 2009.

Filed Aug. 17, 2009.

G. Randall Garrou, John H. Weston, Esquire, Weston Garrou & Dewitt Law Offices, Los Angeles, CA, for Plaintiffs–Appellants.

Scott E. Boehm, Law Office of Scott E. Boehm, Phoenix, AZ, for Defendant–Appellee.

* This disposition is not appropriate for publication and is not precedent except as provided

Before: SILVERMAN, CLIFTON and M. SMITH, Circuit Judges.

## MEMORANDUM *

Plaintiffs Dream Palace and several of its employees appeal the amount of the district court's attorney's fees award to Dream Palace as a prevailing party pursuant to 42 U.S.C. § 1988. We affirm in part, vacate in part, and remand.

We review the district court's fee award, including its determination regarding Dream Palace's degree of success in the underlying civil rights litigation, for abuse of discretion. *See Harris v. Marhoefer,* 24 F.3d 16, 18–19 (9th Cir.1994). Dream Palace prevailed on just four of its original sixteen claims. Given the sheer volume of losses as compared with wins, the district court did not abuse its discretion in concluding that Dream Palace's success was limited. The district court watched this case "unfold before [it]" and was thus in the best position to determine the significance of these wins "in comparison to the scope of the litigation as a whole." *Harris,* 24 F.3d at 18–19; *see Romberg v. Nichols,* 970 F.2d 512, 523–24 (9th Cir. 1992), *vacated on other grounds by Nichols v. Romberg,* 506 U.S. 1075, 113 S.Ct. 1038, 122 L.Ed.2d 348 (1993).

Dream Palace challenges various aspects of the district court's lodestar calculation. With respect to the rates component, the district court sufficiently and concisely explained the basis by which it calculated reasonable hourly rates for Dream Palace's various attorneys, and its calculation is supported by the record. *See Moreno v. City of Sacramento,* 534 F.3d 1106, 1116

by 9th Cir. R. 36–3.

(9th Cir.2008); *Carson v. Billings Police Dep't*, 470 F.3d 889, 892–93 (9th Cir.2006).

■ Dream Palace also challenges the hours component of the lodestar on numerous grounds. We largely affirm the district court's discretionary calibration of compensable hours in accordance with its determination regarding the degree of Dream Palace's success. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–40, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1029 (9th Cir.2000). However, the district court's decision not to award fees for work performed in the district court on issues that Dream Palace lost in district court but won on appeal was improper. *See Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052–53 (9th Cir.1991). Although Dream Palace's success was limited, it was at minimum entitled to attorney's fees for all work reasonably expended on those claims on which it ultimately prevailed, during *all* phases of the litigation. *See id.* We recognize that, in denying Dream Palace's Motion to Alter or Amend Judgment on Attorney Fees, the district court indicated that it did take this work into account, but in this one sense we conclude that the district court has undervalued Dream Palace's level of success. Accordingly, we conclude that Dream Palace is entitled to an additional $13,905.40 in fees for work performed at the district court level on its challenges to provisions of the ordinance banning "specific sexual activities" and requiring public disclosure of performers' identities.[1]

■ We reject Dream Palace's remaining challenges to the district court's calculation of compensable hours, as it was within the district court's discretion to reduce the reasonable hours component so as to incorporate Dream Palace's limited success into the lodestar itself. *See Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933; *Webb v. Ada County, Idaho*, 195 F.3d 524, 526 & n. 1 (9th Cir.1999); *U.S. v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir.1991). Likewise, it was within the district court's discretion to reduce the overall fee award to reflect a relative lack of success by excluding reimbursement for Dream Palace's costs. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1199–1200 (9th Cir.2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir.1995).

Finally, it was within the district court's discretion to manage its docket by establishing a firm deadline for any further filings in this protracted litigation and thereafter excluding from consideration Dream Palace's "First Supplemental Fees Application" as untimely. *See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 807–08 (9th Cir.2002); *see also United States v. Real Prop. Known as 22249 Dolorosa Street, Woodland Hills, Cal.*, 190 F.3d 977, 985 (9th Cir.1999).

Accordingly, we vacate the court's final order awarding Dream Palace $25,473.45 in fees and remand with directions to enter a modified fee award of $39,378.85, in accordance with this disposition. Under the circumstances, no further adjustment appears appropriate to us, nor should any further fees be awarded for time spent pursuing the fee application itself or this appeal. Each side is to bear its own

---

1. This figure encompasses 2.6 hours of work by John H. Weston at a rate of $350/hour, 38.7 hours of work by G. Randall Garrou at a rate of $275/hour, and 21.39 hours of work by assorted other attorneys at a rate of $110/ hour. Since the district court accepted as reasonable the hours Dream Palace alleges its attorneys spent on the various claims in this litigation, we do as well.

costs.[2]

**AFFIRMED in part; VACATED in part and REMANDED.**

Smith, M., dissenting:

I respectfully dissent.

While I largely agree with my colleagues' description of the legal framework controlling our analysis, I feel that the majority's reasoning is flawed in two respects. First, the majority relies heavily on the fact that "Dream Palace prevailed on just four of its original sixteen claims" to conclude that Dream Palace's success was limited, thereby justifying a reduced fee award. Second, the majority fails to acknowledge that those four successful claims represented the most important elements of Dream Palace's complaint, and that success on those claims represented a significant achievement in light of the litigation as a whole.

As the majority notes, the district court is granted broad discretion in calibrating compensable hours based upon a successful outcome. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, the district court must be guided by the Supreme Court's instruction that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* at 435, 103 S.Ct. 1933 (internal citation omitted). *See also Morales v. City of San Rafael,* 96 F.3d 359, 364–65 (9th Cir.1996) (rejecting an analysis of fees based solely on monetary results in favor of analysis that takes into account "the significant nonmonetary results" achieved for the plaintiff and the rest of society).

Reducing the fees sought based on "the sheer volume of losses as compared with wins" is flawed reasoning under *Hensley.* But in this case, the majority is not even consistent in its numerical approach, granting Dream Palace only 11 % of its requested fees even though Dream Palace prevailed on 25% of its claims.

Based largely on their numerical approach, both the district court and the majority concluded that Dream Palace achieved only limited success, a conclusion not supported by the record. Dream Palace brought this action to challenge an ordinance adopted by Maricopa County that purported to ban "specific sexual activity" including any "simulated" sexual acts; required exotic dancers to wear work identification cards at all times, even when in the process of removing their clothing on stage; required employees to provide their home addresses to the County, in such a way that they could be available to

---

**2.** Dream Palace filed a motion with this court for leave to file an oversized brief, and this court granted the motion in part, permitting Dream Palace to file a brief not exceeding 21,000 words. Dream Palace's subsequent motion for reconsideration from this court's order directing the elimination of 7,275 words from its oversized brief was denied. Thereafter, Dream Palace filed a brief containing a certificate of compliance signed by Dream Palace's attorney indicating the brief contained 20,998 words. At oral argument, Dream Palace acknowledged that this figure does not include approximately twenty additional pages in "addenda" and "exhibits" included in the brief. These pages are essentially additional argumentation that by any measure should have been included in the main body—and confined to the word limitations—of the brief. The court strongly disapproves of this flagrant attempt to circumvent both our court orders and F.R.A.P. 32(a)(7)(B)(I), and admonishes Dream Palace's counsel to desist from engaging in such practices in the future.

the general public on request; and imposed several other operating restrictions, including stage height requirements and restrictions on hours of operation. Dream Palace succeeded in striking the ban on "specific sexual activity" and "simulated" sexual acts, and the requirement that dancers wear their identification cards. Dream Palace also successfully obtained a permanent injunction against the County's distribution of its employees' personal information. Dream Palace did not prevail on its challenges against the regulations concerning stage height and hours of operation.[1]

Viewing the substance of all the claims in the context of the litigation as a whole, it is evident that Dream Palace was substantially more successful than it was unsuccessful, and that it prevailed on the most important aspects of its suit. Had Dream Palace not succeeded in striking the ban on simulated sex acts, for example, it would have been unable to continue its business of exotic dancing. Had Dream Palace's dancers been required to wear their identification cards at all times, the dancers's performance would have been rendered ludicrous, not enticing, to customers. Had Dream Palace's employees been forced to make their personal information available to anyone who might request it from the County, it is unlikely any of them would have continued their employment, given the high risk of molestation from stalkers or protestors. The aggregate success achieved by Dream Palace was not "limited in comparison to the scope of the litigation as a whole," because victory in its successful claims was vital to the continuance of Dream Palace's business, while the unsuccessful claims were the equivalent of legal flotsam. *See Hensley*, 461 U.S. at 440, 103 S.Ct. 1933.

Although Dream Palace's success in defending its business may not please some, its suit represents a successful defense of First Amendment rights to expression and a protection of its employees' privacy rights. A personal distaste for Dream Palace's business is not an appropriate basis for determining the success of Dream Palace's law suit, and the fees legitimately owed as a result of that success.

I agree with the panel's ruling insofar as it remands to allow for an additional $13,905.40 in fees for work performed at the district court level on an ultimately successful claim. However, I feel the panel's ruling does not go far enough. I would therefore conclude that the district court abused its discretion in finding that Dream Palace had "limited" success, which warranted a drastic reduction in the fees to which it was legitimately entitled. I would reverse and remand for a reassessment of attorney's fees in keeping with the legal analysis outlined in this dissent.

---

1. Dream Palace challenged multiple aspects of the ordinance's licensing requirement on the grounds that forcing its employees to provide their personal information to the County would expose them to danger of molestation at their home addresses. When it ultimately prevailed on the claim for an injunction against the County's release of that information, it conceded that its other claims, which would remove the requirement to provide that information at all, were moot. Therefore, although Dream Palace did not "succeed" on those claims, it did succeed in removing the harmful consequences that motivated the claims.