**ESTATE OF Joseph D. FARRAR and Dale Lawson Farrar, Plaintiffs–Appellees,**

v.

**Clarence D. CAIN, et al., Defendants,**

and

**William P. Hobby, Jr., Defendant– Appellant.**

No. 90–2830.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1991.

Mary F. Keller, First Asst. Atty. Gen., Javier P. Guajardo, Asst. Atty. Gen., Aus-

tin, Tex., Jim Mattox, Atty. Gen., Finis E. Cowan, Joseph D. Cheavens, Baker & Botts, Houston, Tex., Patrick O. Keel, Baker & Botts, Austin, Tex., for defendant-appellant.

Ken E. Mackey, Conner, Cantey & Mackey, Waggonner Carr, Austin, Tex., for Farrar.

Before REAVLEY, HIGGINBOTHAM and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Joseph and Dale Farrar brought a § 1983 suit against then-Lieutenant Governor William Hobby, among others, alleging that Hobby had participated in a conspiracy to deprive the Farrars of their civil rights. At trial the Farrars sought only money— $17 million in damages. The jury found Hobby innocent of any conspiracy, but nonetheless found that he had violated the Farrars' civil rights. Yet the jury found no damages. On remand, the trial court awarded the Farrars $1 in nominal damages and, finding the Farrars to be the "prevailing parties" under § 1988, awarded them over $300,000 in attorney's fees and expenses. We are not persuaded that the Farrars were the prevailing parties under § 1988. We reverse the fee award.

I

Joseph and Dale Farrar at one time operated Artesia Hall, a facility for troubled teens, in Liberty County, Texas. After the death of an Artesia Hall student in 1973, a Liberty County grand jury returned a murder indictment against Joseph Farrar. The indictment charged Farrar with willfully failing to administer proper medical treatment to the student and failing to timely provide for her hospitalization. Shortly thereafter, the state of Texas, acting through its Attorney General, obtained a temporary injunction closing Artesia Hall.

William Hobby, then Lieutenant Governor, played some role in the events leading to the closing of Artesia Hall. Upon learning of the indictment through the media, and discussing the situation with State Representative John Whitmire, Hobby issued a press release criticizing the Texas Department of Public Welfare and its licensing procedures. He also contacted Raymond Vowell, the director of the TDPW, and urged him to investigate Artesia Hall. Several days later, Hobby met with Governor Dolph Briscoe and accompanied Briscoe on an inspection of Artesia Hall. Finally, he attended the temporary injunction hearing with Briscoe, but did not personally testify, and spoke to reporters after the hearing.

The murder indictment was eventually dismissed. Joseph Farrar later filed this suit against Hobby, Judge Cain, County Attorney Hartel, and the director and two employees of the Texas Department of Public Welfare, seeking injunctive relief and monetary damages under 42 U.S.C. §§ 1983 and 1985. Later amendments to the complaint added Farrar's son, Dale, as a plaintiff, dropped the claim for injunctive relief, and increased the requested damages to $17 million. The Farrars alleged that the defendants violated their civil rights by, among other things, malicious prosecution aimed at closing the school, thereby depriving them of the right to practice their livelihood and profession. They also alleged a conspiracy to violate their civil rights.

The district court granted the defendants' motion for summary judgment on February 23, 1981, but a panel of this court vacated the order. Joseph Farrar died on February 20, 1983, and the court granted a motion to substitute the co-administrators of his estate, Pat Smith and Dale Farrar, as plaintiffs. On August 15, 1983, the case was tried to a jury on ten special interrogatories. The jury found that none of the defendants were immune from liability, that all of the defendants except Hobby engaged in a conspiracy against the plaintiffs, that the conspiracy was not the proximate cause of any injury, that Hobby "committed an act or acts under color of state law that deprived Plaintiff Joseph

Farrar of a civil right," and that Hobby's acts were not the proximate cause of any injury. The district court entered judgment in accordance with the jury's findings on November 10, 1983.

On appeal, in an opinion dated April 8, 1985, this court affirmed in part and reversed in part. We affirmed the district court's failure to award nominal damages against the defendants engaged in the conspiracy because, to establish liability under § 1983, "it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient."[1] However, because the jury found that Hobby committed a civil-rights violation, we remanded for the entry of nominal damages against him.[2]

The Farrars subsequently filed an application for attorney's fees under 42 U.S.C. § 1988, seeking to recover $248,362.50 in fees and $27,976.74 in expenses. After a hearing, the district court entered an order awarding "Pat Smith, Dale Farrar, and Dale Lawson Farrar" $280,000.00 in fees, $27,932.00 in expenses, and prejudgment interest, against Hobby only. The court denied reconsideration of the fee award, and Hobby now appeals to this court. We hold that the Farrars are not "prevailing parties" under § 1988 and therefore reverse.

## II

Section 1988 provides, in relevant part, as follows:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs.[3]

In several recent cases, the Supreme Court has articulated standards for determining whether a party has prevailed for purposes of recovering attorney's fees under § 1988.[4] In *Garland,* rejecting the "central issue" test, which this circuit had applied,[5] the Court stated that "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit' the plaintiff has crossed the threshold to a fee award of some kind."[6] The Court went on to say that,

at a minimum, to be considered a prevailing party within the meaning of § 1988 the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. Beyond this absolute limitation, a technical victory may be so insignificant, and may be so near the situations addressed in *Hewitt* and *Rhodes,* as to be insufficient to support prevailing party status.[7]

The Court also noted that it had first laid this "floor" prevailing-party requirement in *Hewitt.*

*Hewitt* was an inmate's § 1983 suit against prison officials. Following a prison riot in Pennsylvania, officials "charged" inmate Aaron Helms for allegedly striking an officer. Relying solely on the hearsay

**1.** *Farrar v. Cain,* 756 F.2d 1148, 1151 (5th Cir. 1985) (quoting *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984)).

**2.** *Id.* at 1152 (citing *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); and *Webster v. City of Houston,* 689 F.2d 1220, 1230 (5th Cir.1982), *vacated and remanded on other grounds,* 735 F.2d 838 (5th Cir.), *aff'd in part and rev'd in part,* 739 F.2d 993 (5th Cir.1984) (en banc rehearing granted)).

**3.** 42 U.S.C.A. § 1988 (West 1981) (emphasis added).

**4.** *Texas State Teachers v. Garland Indep. School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d

866 (1989); *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988); *Hewitt v. Helms,* 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**5.** *Texas State Teachers Assoc. v. Garland Indep. School Dist.,* 837 F.2d 190 (5th Cir.1988), *rev'd,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

**6.** *Garland,* 109 S.Ct. at 1493 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). In *Hensley v. Eckerhart,* 103 S.Ct. at 1939 (1983), the Court applied the same standard.

**7.** *Id.* (citations omitted).

testimony of the charging officer, a prison committee found Helms guilty. Helms sued claiming denial of due process. The prison officials contested the constitutional claim and invoked qualified immunity. The district court granted summary judgment for the defendants but did not decide the immunity issue. However, the Third Circuit, finding that Helms was denied due process, reversed and instructed the trial court to enter summary judgment for Helms unless the officials could establish an immunity defense. On remand the district court granted summary judgment for the defendants on the basis of qualified immunity.

The Supreme Court held that Helms was not a prevailing party:

> Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.... Helms obtained no relief. Because of the defendants' official immunity he received no damages award. No injunction or declaratory judgment was entered in his favor.[8]

The Court then made the following distinction between "a vindication of rights" and "some relief on the merits:"

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant.... The real value of the judicial pronouncement—what makes it a proper resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.... As a consequence of the present lawsuit, Helms obtained nothing from the defendants.

The only "relief" he received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated. The same moral satisfaction presumably results from any favorable statement of law in an otherwise unfavorable opinion.[9]

The Court applied the *Hewitt* principles in *Rhodes v. Stewart*.[10] In *Rhodes* two inmates in an Ohio prison filed a § 1983 complaint, alleging that, by refusing to permit the inmates to subscribe to a magazine, prison officials had violated the inmates' First and Fourteenth Amendment rights. The district court eventually decided in favor of the plaintiffs, ruling that the officials had not applied the proper procedures and standards. But by the time the district court issued its decision, one of the inmates had died and the other had been released. The district court awarded attorney's fees to the plaintiffs. The court of appeals construed the district court's decision as a declaratory judgment and therefore upheld the fee award.

■ The Supreme Court reversed the fee award on the ground that, because the plaintiffs had won no relief from the defendants, *Hewitt* was controlling:

> A declaratory judgment ... is no different from any other judgment. It will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant towards the plaintiff. In this case there was no such result. A modification of prison policies on magazine subscriptions could not in any way have benefited either plaintiff, one of whom was dead and the other released before the District Court entered its order.... The case was moot before judgment issued, and the judgment therefore afforded the plaintiffs no relief whatsoever. In the absence of relief, a party cannot meet the threshold requirement of § 1988 that he prevail, and in consequence is not entitled to an award of attorney's fees.[11]

---

8. *Hewitt,* 107 S.Ct. at 2675.

9. *Id.* 107 S.Ct. at 2676 (emphasis in original).

10. 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988).

11. *Rhodes,* 109 S.Ct. at 203–04.

Thus, after *Hewitt, Rhodes,* and *Garland,* to qualify as a prevailing party, a plaintiff must show that he won at least some relief from the defendant, that the outcome of the suit changed the legal relationship between the parties, and that the plaintiff's success was not a *de minimis* or technical victory.

### III

■ We are persuaded that the Farrars were *not* prevailing parties for the purposes of § 1988, and we therefore reverse. The Farrars sued for $17 million in money damages; the jury gave them nothing. No money damages. No declaratory relief. No injunctive relief. Nothing. "That is not the stuff of which legal victories are made." [12] Of course, as the district court emphasized, the Farrars did succeed in securing a jury-finding that Hobby violated their civil rights and a nominal award of one dollar. However, this finding did not in any meaningful sense "change the legal relationship" between the Farrars and Hobby. [13] Nor was the result a success for the Farrars on a "significant issue that achieve[d] some of the benefit the [Farrars] sought in bringing suit." [14] When the sole relief sought is money damages, we fail to see how a party "prevails" by winning one dollar out of the $17 million requested. Furthermore, even if the Farrars could be seen as victors, given their singular objective of money damages, surely theirs was "a technical victory ... so insignificant, and ... so near the situations addressed in *Hewitt* and *Rhodes,* as to be insufficient to support prevailing party status." [15]

In *Hewitt* the plaintiff secured a judicial determination that his constitutional rights had been violated. But since he was unable to get any form of relief from the defendants—owing to the defendants' governmental immunity—the plaintiff was deemed not to be a prevailing party. The same principle was applied in *Rhodes.* There the Court said that, although the plaintiffs won a declaratory judgment stating that the defendants had violated constitutional rights, the plaintiffs were not prevailing parties under § 1988 because they received no benefit from the judgment. "In the absence of relief a party cannot meet the threshold requirement of § 1988 that he prevail, and in consequence is not entitled to an award of attorney's fees." [16] Likewise, the Farrars failed to meet that § 1988 threshold, because they too failed to win relief.

We do not diminish the significance of a finding of a constitutional violation. In *Carey v. Piphus,* [17] stressing "the importance to organized society that procedural due process be observed," the Supreme Court held that the denial of due process is actionable for nominal damages even without proof of actual injury. [18] Moreover, as the district court noted, we have held that "[a] violation of constitutional rights is never *de minimis,*" in the sense that a constitutional violation is never "so small or trifling that the law takes no account of it." [19] That holding is no less valid today. Rather, we hold that when the sole object of a suit is to recover money damages, the recovery of one dollar is no victory under § 1988. This was no struggle over constitutional principles. It was a damage suit and surely so since plaintiffs sought nothing more. We must—under *Garland,* [20]

---

**12.** *Hewitt,* 107 S.Ct. at 2676.

**13.** *Garland,* 109 S.Ct. at 1493.

**14.** *Id.*

**15.** *Id.*

**16.** *Rhodes,* 109 S.Ct. at 204.

**17.** 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978).

**18.** Although the Court spoke to the issue indirectly, *Carey,* 435 U.S. at 257 n. 11, 98 S.Ct. at 1049 n. 11, it did not answer the question

whether a plaintiff who wins only nominal damages may recover attorney's fees.

**19.** *Lewis v. Woods,* 848 F.2d 649, 651 (5th Cir. 1988) (citing *Carey* ).

**20.** *Garland,* 109 S.Ct. at 1493 ("Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis,* a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied.") (citation omitted).

*Hewitt,* and *Rhodes*—inquire into whether the plaintiff's victory, as measured by the relief actually obtained, was merely a *de minimis* or technical success.[21]

Our holding today conflicts with opinions of the Second, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.[22] The most recent of those opinions, and the one whose reasoning and holding are most obviously contrary to our own, is *Ruggiero v. Krzeminski.*[23]

In *Ruggiero,* police officers conducted a search of the Ruggieros' home and seized certain items. The Ruggieros brought § 1983 suit against the officers, alleging, among other things, that the search and the seizure were illegal. The jury found that the Ruggieros had not consented to the search. It also found, however, that the Ruggieros suffered no compensatory damages as a result of the illegal search. The trial judge directed the award of nominal damages in the amount of one dollar. The judge also determined that the Ruggieros were the prevailing parties under § 1988 and, accordingly, awarded them attorney's fees.

On appeal the Second Circuit, citing the Supreme Court's opinion in *Carey* as well as this court's opinion in *Farrar I,* approved the nominal-damage award. The court also affirmed the attorney's-fee award and rejected Officer Krzeminski's argument that the Ruggieros were not prevailing parties within the meaning of § 1988 because of their limited success at trial. Quoting from *Garland,* the court

held that the Ruggieros were indeed prevailing parties:

> In a case such as the case at bar, where the claims arise out of a common core of facts and involve related legal theories, success may be assessed by examining whether plaintiffs can "point to a resolution of the dispute which changes the legal relationship between [them] and the defendant[s]."

Based on the Supreme Court's "generous formulation," we think it clear that the Ruggieros were "prevailing parties" as required by section 1988. The jury's determination that appellants' fourth and fourteenth amendment rights were violated by the search conducted by the Officers assuredly is significant. Simply because the jury found that the Ruggieros did not establish their claims in all respects does nothing to lessen the significance, or importance, of the Ruggieros' success. *Although no compensatory damages were awarded, the jury's determination "changes the relationship" between the Ruggieros and the Officers in that a violation of rights had been found.*[24]

Thus the Second Circuit holds that when a jury determines that a constitutional violation has occurred—even when the plaintiff seeks only compensatory relief[25] and the jury finds no damages whatsoever—the legal relationship between the plaintiff and the defendant has changed and the plaintiff has prevailed.

---

**21.** In a related argument, the district court cites three Fifth Circuit opinions that supposedly stand for the proposition that the award of nominal damages will alone support a § 1988 attorney's-fee award. *Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982); *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980); *McNamara v. Moody,* 606 F.2d 621 (5th Cir. 1979). All three cases, however, were decided before and therefore were not governed by the Supreme Court's decisions in *Hewitt, Rhodes,* and *Garland.*

**22.** *Ruggiero v. Krzeminski,* 928 F.2d 558 (2d Cir.1991), *Scofield v. City of Hillsborough,* 862 F.2d 759, 766 (9th Cir.1988); *Coleman v. Turner,* 838 F.2d 1004, 1005 (8th Cir.1988); *Nephew v. City of Aurora,* 830 F.2d 1547, 1553 n. 2 (10th

Cir.1987) (en banc); *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987). *But see Spencer v. General Electric Co.,* 894 F.2d 651 (4th Cir.1990) (*dicta* ). We do not lightly create a conflict. This opinion was circulated to the entire court as required by the court's policy. No member of the court has requested en banc consideration.

**23.** 928 F.2d 558 (2d Cir.1991).

**24.** *Garland,* 109 S.Ct. at 1493 (emphasis added).

**25.** The opinion does not indicate that the Ruggieros sought anything other than monetary damages. In any event, the opinion makes clear the Ruggieros won no relief from the defendants.

Other circuits have reached essentially the same conclusion as the Second Circuit: that a finding of a violation and an award of nominal damages—unaccompanied by other relief—is sufficient to create prevailing-party status.[26] Some of those cases, however, were decided before *Rhodes* or even before *Hewitt*. *E.g., Nephew* (decided before *Rhodes*); *Garner* (decided before *Hewitt*). The cases decided after *Hewitt* and *Rhodes* do not discuss or even refer to either case. Instead, the courts rely on pre-*Hewitt* and pre-*Rhodes* circuit-court decisions.[27] Even *Ruggiero* does not discuss or cite *Hewitt* or *Rhodes;* it relies instead on the Supreme Court's opinions in *Garland* and *Hensley*.

In any event, applying the principles set forth in *Hewitt* and applied in *Rhodes*, we are compelled to disagree with the position taken by these circuits, especially as that position is stated in *Ruggiero*. In *Hewitt* the court of appeals determined that the plaintiff's constitutional rights had been violated. But on remand the trial court denied all relief, as the defendants were protected because of official immunity. The Supreme Court held that the plaintiff was not the prevailing party, because "[t]he only 'relief' he received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated. The same moral satisfaction presumably results from any favorable statement of law in an otherwise unfavorable opinion."[28] After *Hewitt* but before *Rhodes*, one might have distinguished between a mere "favorable statement of law" and an actual judgment declaring a rights violation. In *Rhodes*, however, the Court extended the *Hewitt* principle to situations in which the plaintiff has secured such a judgment but has failed to win relief from the defendant. The Court stated that "[a] de-claratory judgment ... is no different from any other judgment. It will constitute relief, for the purpose of § 1988, if, and only if, it affects the behavior of the defendant towards the plaintiff."[29]

That a court or jury finds a violation does not, by itself, create prevailing-party status. Rather, to be a prevailing party, a plaintiff must secure a decision that changes the legal relationship between the parties in a way that alters the defendant's behavior toward the plaintiff and that secures some of the relief sought by the plaintiff in bringing the suit. The Farrars have won no such victory.

We reverse the district court's attorney's-fee award and hold that the parties shall bear their own costs.

REVERSED.

REAVLEY, Circuit Judge, dissenting:

While I have difficulty understanding the justification for the finding that Governor Hobby violated plaintiffs' civil rights, that issue has been foreclosed. The majority holds that where plaintiff obtains only nominal damages for his constitutional deprivation, he cannot be considered the prevailing party. I disagree and do not read *Hewitt, Rhodes* and *Garland* to go so far. The plaintiffs prevailed in their claim although the amount of their benefit was only nominal. I do not regard that result as insignificant. I would, however, order reconsideration of the amount of the fee under these circumstances.

---

**26.** *Scofield v. City of Hillsborough,* 862 F.2d 759, 766 (9th Cir.1988); *Coleman v. Turner,* 838 F.2d 1004, 1005 (8th Cir.1988); *Nephew v. City of Aurora,* 830 F.2d 1547, 1553 n. 2 (10th Cir.1987) (en banc); *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987). *But see Spencer v. General Electric Co.,* 894 F.2d 651 (4th Cir.1990) (dicta).

**27.** *Coleman,* 838 F.2d at 1005 (citing *Smith v. DeBartoli,* 769 F.2d 451 (7th Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1380, 89 L.Ed.2d 606 (1986)); *Scofield,* 862 F.2d at 766 (citing, *inter alia, Bilbrey v. Brown,* 738 F.2d 1462, 1472 (9th Cir.1988)).

**28.** *Hewitt,* 107 S.Ct. at 2676.

**29.** *Rhodes,* 109 S.Ct. at 203.