# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 25, 2013

No. 12-41054

Lyle W. Cayce
Clerk

MIKE JABARY,

Plaintiff - Appellant

v.

CITY OF ALLEN; PETER SMITH; STEPHEN TERRELL; BO BASS; JON FELTY; JOHN DOE 1-5; BRET MCCULLOUGH, City Building Official for the City of Allen; WILLIAM S. RUSHING, Chief of Police for the City of Allen; PETE VARGAS, City Manager for the City of Allen; JUSTIN SCOTT; SHARON BILLINGTON,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CV-711

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

This appeal arises from Mike Jabary's complaint against the City of Allen, Texas, and a host of local officials, asserting various claims based upon the City's revocation of his Certificate of Occupancy under which he operated his business. The district court dismissed his complaint under Federal Rule of Civil Procedure

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41054

12(b)(6) for failure to state claims upon which relief could be granted. Although we agree that Jabary failed to state claims against several of the defendants, we hold that the district court erred in dismissing his procedural due process claim against two of the defendants, Mayor Stephen Terrell and Chief Building Official Bret McCullough. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings not inconsistent with this opinion.

I.

Mike Jabary, plaintiff and appellant, alleged the following facts in his complaint. He submitted an "Application for a Commercial Certificate of Occupancy Only" to the City of Allen, Texas ("City"), with the intent to open a business inside city limits. His application stated that the building would be used for a "Restaurant." Bret McCullough, Allen's Chief Building Official, and one of the defendants, suggested to Jabary that the application describe the building's use as a "Restaurant and Hookah Bar." In January 2009, Jabary's amended application was approved and the City issued Jabary Mediterranean a Certificate of Occupancy ("Certificate"). In June 2009, he opened Jabary Mediterranean, a restaurant, hookah bar, and tobacco store.[1]

The business operated without interruption for approximately one year, during which the restaurant sold food, drinks, and various tobacco products. One particular product Jabary sold, however, drew the ire of many of Allen's residents. K2, or "Spice," is composed of a mixture of herbs and spices sprayed with synthetic cannabinoids. A user of the substance experiences effects that closely mimic those of THC (the active ingredient in cannabis, otherwise known as marijuana). While the drug K2 was legal at the time Jabary sold it, it was

---

[1] Jabary described hookah as a "method for smoking tobacco utilizing a water jar to cool and purify tobacco . . . [that] has been an important cultural, social, and traditional device of the Middle Eastern Society since its inception."

No. 12-41054

placed into Schedule I of the Controlled Substances Act, effective on March 1, 2011.[2]

The City's opposition to Jabary's establishment first occurred in February 2010. Stephen Terrell, the City's mayor, asked Jabary to move his business, suggesting the reason was its close proximity to the Allen Freshman Center, a secondary school in the area. Terrell, however, also owned a dry cleaners in the same shopping center as Jabary Mediterranean. Jabary advised Terrell that he would not relocate his business because of his lease obligations.

Shortly after this incident, Allen police officers began paying daily visits to Jabary's business. Between April 9, and June 10, 2010, Allen police visited Jabary Mediterranean at least 31 times. Up to nine officers came at one time. Visits occurred as often as three times a day. During this time, the officers cited Jabary for violations of § 161.252 of the Texas Health and Safety Code, which makes unlawful the sale of tobacco products to minors. Jabary alleges that the officers occupied his business in a "menacing manner" and that on multiple occasions customers left because of the officers' menacing presence.

On June 8, 2010, the Allen City Council held a public meeting addressing the continued operation of Jabary Mediterranean and its sale of K2. Public comments ranged from opposition to support for the business. The following day, the City health inspectors visited Jabary Mediterranean, and served a notice of violation for failing to meet criteria for restaurant use. The posted notice, signed by McCullough, stated that Jabary's business was in violation of the Allen Land Development Code and that his Certificate of Occupancy "is hereby revoked." One day later, the police department issued a press release stating that Jabary Mediterranean was selling tobacco to minors and that, as a result of the City's health code inspection, Jabary Mediterranean's Certificate

---

[2] Department of Justice, Drug Enforcement Administration, Drugs of Abuse (2011 ed.).

No. 12-41054

of Occupancy had been revoked.  The stated basis for the revocation was that the business did not qualify as a restaurant due to insufficient food sales.  Jabary Mediterranean was then closed and this lawsuit followed.

II.

On December 28, 2010, Jabary filed a *pro se* complaint in the United States District Court for the Eastern District of Texas.  By May 2011, however, Jabary had retained counsel, and was allowed to amend his complaint.  Jabary's amended complaint named the City of Allen and a number of individual defendants, all of whom held positions in the City's government: Peter Smith, the City Attorney; Stephen Terrell, the City's mayor; Bo Bass, the Director of Planning and Development; Jon Felty, a sergeant in the City's police department; Pete Vargas, the City Manager; Bret McCullough, the Chief Building Official; and William Rushing, the Chief of Police.  These individual defendants asserted a qualified immunity defense and requested that the district court require Jabary to submit a Rule 7(a) reply to their assertions of qualified immunity.  The court granted the defendants' request and in August 2011, Jabary filed his Second Amended Complaint and Rule 7(a) Reply.  Jabary's Second Amended Complaint included several claims.  His first claim was a takings claim against only the City.  His other claims, against the City and the individual defendants, included equal protection, procedural due process, substantive due process, and conspiracy claims.  The district court assigned the matter to a magistrate judge under 28 U.S.C. § 636(b)(1)(B) to make a recommendation for disposition.

The individual defendants filed a 12(b)(6) motion to dismiss the claims on grounds of qualified immunity.  While the court's ruling on that motion was pending, Jabary filed a Third Amended Complaint and a Motion for Sanctions against the defendants.  This complaint relied upon information gathered from a series of emails among City officials, which Jabary had obtained through an

No. 12-41054

open records request. The court dismissed Jabary's Third Amended Complaint as untimely and denied Jabary's Motion for Sanctions.

Meanwhile, the magistrate judge, considering only the Second Amended Complaint, recommended dismissing all of Jabary's claims against the individual defendants on 12(b)(6) grounds and staying the remaining claims against the City until Jabary had exhausted all state procedures for remedies. Finding that Jabary's Second Amended Complaint consisted of nothing but conclusory statements, the recommendation further stated that the individual defendants were entitled to qualified immunity because their actions were taken in the routine exercise of their duties.

The district court adopted the magistrate's recommendation, dismissed all claims against the individual defendants, based on qualified immunity, and entered final judgment for the individual defendants pursuant to Federal Rule of Civil Procedure 54(b). Jabary appeals the dismissal of his takings, equal protection, procedural due process and conspiracy claims against the defendants in their individual capacities. Jabary's claims against the City remain stayed until Jabary adequately exhausts his state law remedies.

III.

We review *de novo* the dismissal of claims under Rule 12(b)(6), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Rule 8 does not demand "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). Thus, a plaintiff's claim must contain "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). This plausibility standard is met where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

No. 12-41054

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. With respect to any well-pleaded allegations "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664.

IV.

As preliminary matters, we address Jabary's contention that the district court should have considered information contained within his Third Amended Complaint and that the district court erred in dismissing his takings claim. Jabary did not request written consent from the defendants, nor did he seek the court's leave; therefore, the district court's striking of his Third Amended Complaint was proper. The proper scope of the district court's review under Rule 12(b)(6) was limited to Jabary's Second Amended Complaint.

With regard to the dismissal of Jabary's takings claim, its dismissal with prejudice was improper because his claim was not ripe.[3] Jabary has failed to adequately exhaust his state remedies in seeking just compensation for the alleged taking. As such, the district court lacked subject matter jurisdiction to hear the issue on the merits and dismissal of a claim against the individual defendants with prejudice is improper. *See Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) (holding that the court should allow state takings procedures to run their course and therefore a dismissal without prejudice is necessary). In this matter, the district court mistakenly ordered the dismissal of the takings claim with prejudice. We modify

---

[3] "Ripeness is a component of subject matter jurisdiction." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). Since ripeness is an issue of subject matter jurisdiction, "[b]efore addressing the merits of any appeal . . . this court must be convinced that the claim in question is ripe, even if neither party has raised the issue." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006). Takings claims "are not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner; and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." *Id.* at 292-93 (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985)).

the dismissal to be without prejudice as to the takings claim, and AFFIRM the dismissal as modified.

## V.

We now shift our focus to Jabary's Fourteenth Amendment equal protection claim based on his membership in various protected classes. Jabary offers few facts to support this claim. Jabary's first allegation is that:

> [his] race, ethnicity, country of origin, religion, and customs formed the basis of this discrimination [and that the] actions of the individual actors as well as the City of Allen deprived Jabary of the opportunity to practice his customs freely without interference, in the lawful operation of his ethnic restaurant and hookah bar.

Jabary next alleges that he "was deprived of the equal protections of the laws, and was discriminated against based upon his race, religion, national origin, and his customs and practices of his country of origin."

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). All of Jabary's factual allegations merely state that the individual defendants undertook their wrongful activities because of Jabary's membership in certain classes; he fails to elaborate on the causal connection between his alleged mistreatment and his membership in those protected classes. Although his statements are consistent with an equal protection claim, they fail to "'nudge his claim of purposeful discrimination across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570). Jabary's equal protection claim is not plausible because there is an "obvious alternative explanation" for the revocation of the Certificate, namely its close proximity to an Allen secondary school, the sale of the controversial K2 drug, and the City's residents' outcry against alleged sales of tobacco products to minors. *Twombly*, 550 U.S. at 567. Because Jabary failed to meet the pleading standard under *Iqbal*, we need not address the sufficiency of the

No. 12-41054

individual defendants' claims of qualified immunity. We AFFIRM the district court's dismissal of Jabary's equal protection claim with prejudice.

VI.

A.

We next consider Jabary's procedural due process claims. The district court adopted the magistrate judge's recommendation and dismissed Jabary's procedural due process claims under Rule 12(b)(6). The magistrate found that Jabary's complaint was filled with conclusory statements and that he failed adequately to allege the individual defendants deprived him of notice and a meaningful opportunity to be heard. A close review of Jabary's Second Amended Complaint suggests otherwise.

"To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). In procedural due process claims, "the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

The defendants argue that Jabary failed to plead facts "showing that he had a protected property interest to operate a Hookah Bar which sold tobacco and the dangerous substance K-2 for on-premises consumption, at a business that was classified under City code to be operated as a restaurant." Despite the defendants' contention otherwise, it is clear to us that Jabary sufficiently alleges he had a protected property interest in his Certificate of Occupancy. Texas law finds a property interest where an entity "has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings." *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.-

8

Houston [14th Dist.] 2009); *see also Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) ("Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process."). Jabary's Certificate was "essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). "[O]nce issued, a license or permit cannot be taken away by the State without due process." *Bowlby*, 681 F.3d at 220 (citing *Bell*, 402 U.S. at 539). In short, Jabary had a protected property interest in the Certificate. The next question to consider is whether sufficient procedures were afforded Jabary before the deprivation of that protected property interest.

## B.

Due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted) (citation omitted). Generally, a "'meaningful time' means prior to the deprivation of the liberty or property right at issue." *Bowlby*, 681 F.3d at 220 (citing *Zinermon*, 494 U.S. at 127). The United States Supreme Court has described the requirement "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest" as "the root requirement of the Due Process Clause." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted) (citation omitted). Although there are some limited exceptions that the United States Supreme Court has defined with respect to predeprivation notice and hearings, this case does not appear to fit within one of those exceptions. *Zinermon*, 494 U.S. at 129.

Whether due process is provided to an individual depends upon the protections a particular situation demands. The Supreme Court requires the consideration of three factors in determining whether proper procedural protections were afforded. *Mathews*, 424 U.S. at 321. First, a court evaluates "the private interest that will be affected by the official action;" second, "the risk of an erroneous deprivation of such interest through the procedures used, and

No. 12-41054

[the] probable value, if any, of additional procedural safeguards;" and third, "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.*

In *Bowlby*, our court recently applied the *Mathews* factors to an almost identical factual situation. 681 F.3d at 221. Bowlby was issued permits by the Aberdeen Planning and Zoning Board to operate a "Sno Cone" hut inside Aberdeen city limits. *Id.* at 218. Two months after issuance, the Board met and decided to revoke the permits it had given Bowlby. *Id.* Bowlby was not informed of the meeting, nor was she informed that the Board would be reviewing her permits. *Id.* The day after the meeting, a city building inspector informed Bowlby that since her business "did not conform to the laws and regulations of the City[,]" she had to immediately close it because her permits had been revoked. *Id.* Applying the first *Mathews* factor, the court held that Bowlby had a private interest in her ability to operate her business. *Id.* at 221. Second, the city had not provided "*any* process prior to revoking Bowlby's permits, which increase[d] the risk of an erroneous deprivation[,]" thereby proving that "any procedural safeguards would [have been] highly valuable." *Id.* Third, we further concluded that "providing some sort of predeprivation procedure would [not have been] overly burdensome." *Id.* After application of the *Mathews* factors, due process, "[i]n a situation such as Bowlby's . . . demand[ed] more than no hearing at all." *Id.* We reversed the district court's Rule 12(b)(6) dismissal of Bowlby's procedural due process claim.

Notwithstanding the magistrate's conclusion that Jabary failed adequately to plead a deprivation of due process, we hold that he adequately pled such a claim as to two of the individual defendants. Jabary's Second Amended Complaint alleges that the City deprived him of his right to use of the Certificate

10

of Occupancy "without due process or opportunity to be heard."[4]  He alleges that the City is a state actor, that each of the individual defendants held City positions, and that the City and its actors neither provided notice of its intent to revoke his Certificate, nor held any proceeding that he could attend before his Certificate was revoked.  Jabary's allegations create a reasonable inference that his procedural due process rights were violated, fulfilling the plausibility standard for pleading under *Iqbal*.  Questions remain with respect to which individual defendants he adequately pled a violation of his procedural due process rights.

## C.

### 1.

In § 1983 suits, a plaintiff must "establish that the defendant was either *personally involved* in the deprivation or that [the official's] wrongful actions were *causally connected* to the deprivation."  *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)) (emphasis added).  Adding another layer to peel back from the core of Jabary's claims is the defendants' assertions of qualified immunity. Jabary's allegations must not only show personal involvement in the revocation of his Certificate, but he must also show that the individual defendants' conduct "violate[d] a clearly established constitutional right" since the officials arguably were acting within the scope of their discretionary authority.  *Id.* at 351 (quotation omitted) (citation omitted).

---

[4] The individual defendants do not argue that the public meeting, which was held to hear Allen residents' concerns about Jabary Mediterranean, constituted sufficient predeprivation process so we will not consider such a meeting sufficient on Rule 12(b)(6) review.

No. 12-41054

2.

Jabary alleges that Bret McCullough, as Allen's Chief Building Official, "signed and approved" the violation of the Allen Land Development Code, which resulted in the revocation of Jabary's Certificate without predeprivation notice. Considering McCullough's authority, along with the allegation that he signed the hang tag on the door of Jabary Mediterranean, informing Jabary that his Certificate had been revoked, Jabary has made plausible his claim that McCullough was accountable.

Next, we consider whether Jabary's procedural due process claim against Mayor Stephen Terrell survives the Rule 12(b)(6) dismissal. Jabary alleged that Terrell utilized his position as mayor "to facilitate the revocation of the Certificate of Occupancy without legal basis." His allegation that Terrell was the initiator and ringleader of the movement to have the Certificate revoked is supported by the fact Mayor Terrell initially suggested that Jabary needed to change locations and was rebuffed by Jabary. Furthermore, Terrell's monetary interest in a business in the shopping mall, where Jabary Mediterranean was seen as a public problem, indicates a motive for Terrell to spur forward the revocation. Accepting as true all alleged facts, Jabary's Second Amended Complaint makes plausible, for purposes of our Rule 12(b)(6) consideration, that Terrell was personally involved in the deprivation of Jabary's Certificate without due process of law.

The claims against all remaining defendants do not survive the dismissal, however; Jabary simply has failed to plead sufficient factual content to support those claims. First, with respect to Peter Smith, Jabary alleges that, as the City Attorney, Smith formulated the legal basis for revoking Jabary's Certificate and that other local officials relied upon his advice in their conduct. But Jabary fails to allege facts that would establish that Smith made any decision or gave any advice intentionally to deprive Jabary of his Certificate without a hearing.

12

Indeed, there is no allegation that Smith was a decision-maker—he only gave legal advice to the decision makers. The Complaint does not allege facts that demonstrate that Smith acted in any role other than as an attorney-advisor. Even assuming that his legal advice was erroneous, erroneous advice does not support a § 1983 claim against an attorney for a procedural due process violation.

Similarly, Jabary alleges only that Bo Bass, the City's Director of Planning and Development, acted "in concert" with other city officials.  He fails to detail Bass's role in the revocation other than to say Bass "advised" the City "of a law that did not exist in an effort to assist the City [and others] to shut down Jabary Mediterranean."  The complaint does not tell us of Bass's responsibilities in the City's government; we are not informed of the content of Bass's "advice," and we see no interaction with Jabary on Bass's part regarding Jabary's business.

Nor do Jabary's allegations support his claim against Peter Vargas, Allen's City Manager.  Jabary alleges that Vargas "effectuated the policy of the City and conspired with Terrell and Smith in secret meetings to deprive Jabary of his civil rights."   Such a sweeping and unspecific allegation, along with Jabary's contention that Vargas "actively assisted [the others] in depriving Jabary of his civil rights[,]" does not push Jabary's claim past mere possibility towards plausibility.  This court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Jabary's procedural due process claim against Vargas, like his claim against Bass, fails for lack of background facts necessary to create a reasonable inference that Vargas was involved.  A reasonable inference does not arise solely on account of Vargas's position as City Manager.  Jabary must allege more, but he does not.

Jabary's complaint fails to allege that the remaining two individual defendants, Sergeant Jon Felty and Chief William Rushing of the Allen Police

No. 12-41054

Department, were personally involved in the revocation of Jabary's Certificate. Jabary merely alleges that they were involved in the harassing police visits to Jabary Mediterranean, which is separate from the deprivation of procedural due process here. Simple conclusory allegations that Felty and Rushing "actively assisted" in the enforcement of unlawful policies fail to create a reasonable inference that Felty and Rushing were, in any way, personally involved in the decision to revoke Jabary's Certificate.

D.

Thus, we come to the claims of qualified immunity of the two culpable individuals. We start our analysis by noting the seminal case, *Harlow v. Fitzgerald*, in which the Supreme Court laid out the parameters of qualified immunity, as an affirmative defense. 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Evaluating qualified immunity is a two-step process, with the plaintiff bearing the burden of showing that the defendants are not entitled to immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). The first step is to determine "whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right." *Id.* (citing *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir. 2000)). A specific right is clearly established only if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000) (quotation omitted) (citation omitted). If the plaintiff has sufficiently alleged a violation of a "clearly established constitutional right," the next step requires a determination of "whether the defendant's conduct was objectively reasonable." *Wyatt*, 718 F.3d at 503.

No. 12-41054

To determine whether the contours of Jabary's right to receive predeprivation process were "clearly established," we ask whether "the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law." *Id.* (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). There must be "controlling authority–or a robust consensus of persuasive authority–that defines the contours of the right in question with a high degree of particularity." *Id.* (quotation omitted) (citation omitted)*; see also Loudermill*, 470 U.S. at 542 (stating that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case'"). In most cases, due process requires a predeprivation notice or hearing so that a person has the opportunity "to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quotation omitted) (citation omitted). "[P]ermits and licenses relate to the maintenance of a person's livelihood" and, therefore, "'suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees.'" *Bowlby*, 681 F.3d at 221 (quoting *Bell*, 402 U.S. at 539). Ordinarily, an individual must be "given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542. Predeprivation notice, when depriving someone of an important property interest, is "the root requirement of the Due Process Clause." *Id.* Jabary's property interest in the Certificate was obvious and the alleged failure to give predeprivation process was a violation of a clearly established right under the Fourteenth Amendment.

Under the second prong of the *Harlow* analysis, we conclude that the conduct of the two defendants, as alleged, was not objectively reasonable. Where a law "was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his

15

No. 12-41054

conduct." *Harlow*, 457 U.S. at 818-19. In this matter on appeal, these two defendants can cite no "extraordinary circumstances" to prove that they "neither knew nor [that they] should have known" of Jabary's right to due process. *Id.* at 819. The summary revocation of Jabary's Certificate without notice and without an opportunity to be heard, as alleged in the complaint, cannot be described as objectively reasonable under current Supreme Court and Fifth Circuit precedent. As such, the defendants have not, on appeal, demonstrated a right to qualified immunity.

E.

In sum, we AFFIRM the dismissal of Jabary's procedural due process claim against defendants Smith, Bass, Vargas, Felty, and Rushing, but REVERSE and REMAND, for further proceedings the district court's dismissal as to McCullough and Terrell.

VII.

Finally, we will spend a moment on Jabary's conspiracy claim. To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *see also Estate of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991) (requiring that a plaintiff must prove "an actual deprivation of a constitutional right").[5] A conspiracy allegation under § 1983 allows a plaintiff to "impose liability on all of the defendants without regard to who committed the particular act." *Haley v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). Jabary's conspiracy claim need not have met a "probability requirement at the pleading stage;

---

[5] While Jabary also alleged a conspiracy under § 1985(3), that claim fails along with his equal protection claim. Conspiracies under this section must have a "racially based animus." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)). This element is missing.

[plausibility] simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. Jabary's facts, when "placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557.

Because Jabary is required to allege an actual deprivation to support a conspiracy claim under § 1983, an alleged conspiracy claim can only survive with respect to the two individual defendants against whom we have found Jabary made sufficient procedural due process claims in their individual capacities. Jabary's conspiracy allegations include statements of alleged overt acts that local officials "held private meetings to devise a method of shutting down Jabary Mediterranean" and that they "actively conspired" with each other to "destroy Jabary's civil rights." Other allegations include that there were "several conversations, private meetings, and other communications" that took place to further their conspiracy to "deprive Jabary of his civil rights and the due process of the law." Such statements are conclusory in nature. Without more background facts, Jabary is unable to demonstrate the existence of the local officials' alleged agreement to the level of plausibility necessary to pass scrutiny under Rule 12(b)(6). The times, places, and other circumstances of the "private meetings" and secret conversations are notably absent. Jabary simply fails to create a reasonable inference that such an agreement existed.

We need not address Jabary's claims regarding an alleged conspiracy to deprive him of his Certificate by way of police harassment, because that conduct did not result in an actual deprivation necessary to support a conspiracy claim under § 1983 to deny him due process of law. We AFFIRM the dismissal of Jabary's conspiracy claims against all of the individual defendants.

No. 12-41054

## VIII.

We emphasize that this appeal has reviewed *only* the 12(b)(6) dismissal of the complaint and that we do not address the eventual success or failure of Jabary's claims that have been saved by this opinion. We have not considered any material other than the bare allegations in his Second Amended Complaint. Summarizing, we AFFIRM as modified the dismissal of the takings claim asserted against the City; it is dismissed without prejudice so that Jabary is not precluded from pursuing available state remedies. We AFFIRM the dismissal of Jabary's substantive due process claim against each of the individual defendants. We AFFIRM the dismissal of Jabary's procedural due process claim against defendants Smith, Bass, Vargas, Felty and Rushing, but REVERSE and REMAND for further consideration, not inconsistent with this opinion, Jabary's procedural due process claim with respect to McCullough and Terrell. With respect to the § 1983 conspiracy claim against the individual defendants, we AFFIRM its dismissal. Accordingly, the judgment of the district court is

AFFIRMED in part; REVERSED in part; and REMANDED.